**CROWN CLOTHING COMPANY, Plaintiff,**

v.

**Carmen PAPALE, et al., Defendants.**

**Civ. A. No. 92–2513(SSB).**

United States District Court, D. New Jersey.

June 10, 1994.

---

Jeffrey I. Pasek, Cohen, Shapiro, Polisher, Shiekman and Cohen, Lawrenceville, NJ, for plaintiff.

Edward S. Wardell, Jeffrey S. Craig, Saul, Ewing, Remick & Saul, Voorhees, NJ, Christine Williams, Jerry M. Cutler, Abato, Rubenstein and Abato, P.A., Baltimore, MD, for defendants Carmen Papale and Baltimore Regional Joint Board, Amalgamated Clothing and Textile Workers Union, AFL–CIO–CLC.

Jack Goldstein, Goldstein & Wallman, Matawan, NJ, for Amalgamated Life Ins. Co., Amalgamated Ins. Fund, and Jeffrey Warbet.

## OPINION

BROTMAN, Senior District Judge.

Before the Court are (1) the motion of Defendants Carmen Papale and Baltimore Regional Joint Board, Amalgamated Clothing and Textile Workers Union, AFL–CIO–CLC ("Union Defendants"), to dismiss or for summary judgment, and (2) the motion of Defendants Amalgamated Life Insurance Company, Amalgamated Insurance Fund, and Jeffrey Warbet ("Fund Defendants") to dismiss, for summary judgment, or to stay the proceedings until arbitration is completed. As is detailed below, the motions are granted in part and denied in part.

## I. Background

### A. Facts

Plaintiff Crown Clothing Company ("Crown" or "Plaintiff") is a clothing manufacturer located in Vineland, New Jersey. Defendants are (1) Baltimore Regional Joint Board, Amalgamated Clothing and Textile Workers Union, AFL–CIO–CLC, the union that formerly represented Crown's employees, (2) Mr. Papale, the manager of that union, (3) Amalgamated Life Insurance Company, the administrator of the pension fund used by Crown's union employees, (4) Amalgamated Insurance Fund, the pension fund itself, and (5) Jeffrey Warbet, the vice-president of the insurance company.

The case arises out of liabilities imposed on Crown by the Fund Defendants after a falling out between Crown and the union. The

relevant events are as follows: In 1991, Crown and the union reached an impasse in the course of negotiating a new collective bargaining agreement. Defendant Papale, unsatisfied with Crown's bargaining, apparently informed the Fund Defendants that the union no longer represented Crown's employees. As a result, the Fund Defendants informed Crown that, since it had effectively withdrawn from the pension fund by separating from the union, Crown had incurred a "withdrawal liability" of over $600,000, pursuant to the Multiemployer Pension Plan Amendments Act ("MPPAA"). (The relevant MPPAA provisions, 29 U.S.C. § 1381(a), 1392(a), require employers withdrawing from pension funds to pay for all unfunded vested benefits of their employees.) Crown made several payments and then instituted this lawsuit, simultaneously initiating an arbitration proceeding to determine the validity of the withdrawal liability.

## B. Nature of Case

In the instant action, Crown alleges that the imposition of "withdrawal liability" was improper, and also claims that the Union Defendants and Fund Defendants illegally conspired to use the threat of "withdrawal liability" as a bargaining chip in labor negotiations. There are five counts in Crown's complaint:

*Count One* challenges the imposition of the withdrawal liability, on the basis that Crown should have been shielded by MPPAA § 1398(2), which bars liability where a labor dispute is the cause of the withdrawal.

*Counts Two through Five* are all brought under federal common law pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). In *Count Two*, Crown alleges that the Union Defendants breached their common law duty under ERISA by using withdrawal liability as a bargaining chip. In *Count Three*, Crown alleges that the Fund Defendants breached the same duty by conspiring with the union and by failing to investigate Crown's claim that a labor dispute led to the withdrawal (and thus shielded Crown from liability).

In *Count Four*, Crown alleges that the Union Defendants committed an injurious falsehood, in that the union claimed to cease representing Crown's employees only to trigger the withdrawal liability and had no intention of permanently cutting its ties with Crown.

Finally, in *Count Five*, Crown alleges that the Union Defendants' actions constituted an interference with an advantageous relationship between Crown and the pension fund.

## C. Motions Before Court

As noted above, there are two motions before the court. The Union Defendants move to dismiss or for summary judgment. The Fund Defendants move to dismiss, for summary judgment, or to stay proceedings until arbitration is completed. The issues underlying these respective motions are analogous for the most part. Combined, there are four issues before the Court:

1. **MPPAA Arbitration.** The Defendants argue that the MPPAA requires that all disputes relating to withdrawal liability be arbitrated prior to the initiation of an action in court. This argument directly applies only to Count One, but indirectly affects Counts Two through Five as well.

2. **NLRA Preemption.** The Defendants argue that Plaintiff's claims are arguably related to Sections 7 and 8 of the National Labor Relations Act ("NLRA"), which govern bargaining tactics in labor negotiations, and are therefore subject to the exclusive jurisdiction of the National Labor Relations Board ("NLRB").

3. **Federal Common Law.** Defendants make the general argument that ERISA is not intended to create common law remedies for employers suing non-fiduciaries, and that the comprehensive nature of ERISA creates a presumption against allowing separate common law remedies. Defendants then make specific challenges to Counts Two through Five, arguing that Crown has failed to state a claim or, alternatively, has provided insufficient evidence to survive summary judgment.

4. **Personal Jurisdiction Over Defendant Papale.** The Union Defendants argue

that this Court does not have personal jurisdiction over Carmen Papale as an individual, but only as an agent of the union.

These arguments and Plaintiff's responses thereto are respectively addressed below.

## II. Discussion

### A. MPPAA Arbitration

■ The first issue to be addressed is whether Plaintiff's first count is preempted by the MPPAA and thus must be arbitrated before any action may proceed in this Court.[1] As Defendants point out in their briefs, § 1401(a) of the MPPAA requires arbitration for all disputes concerning a determination made under §§ 1381–99. The obligation to pay withdrawal liability—which arises when an employer prematurely ceases to have an obligation to contribute to a multiemployer pension plan—is codified at § 1381(a) and § 1392(a). Limited exceptions apply to this general rule, one of which shields employers from withdrawal liability where the employer has "suspend[ed] contributions during a labor dispute involving its employees." 29 U.S.C. § 1398(2). As the provisions governing withdrawal liability and the labor dispute exception—together comprising the core of Plaintiff's first count—both fall within §§ 1381–99, Defendants contend that the count is preempted.

Plaintiff contends, on the contrary, that arbitration is only required where "technical" assessments, e.g. challenges to calculations made pursuant to § 1381–99, are at issue. *Carl Colteryahn Dairy, Inc., v. Western Pa. Teamsters & Employers Pension Fund,* 847 F.2d 113, 118–19 (3d Cir.1988), *cert. denied,* 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989). According to Plaintiff, such a determination is not present here; the core question, Crown argues, is much more basic: whether Defendants improperly used ERISA withdrawal liability to coerce Plaintiff into kowtowing to the union's demands.[2] Plaintiff additionally argues that the remedies avail-

able through arbitration are insufficient to redress their alleged injuries that resulted from the imposition of withdrawal liability.

The Court finds Plaintiff's arguments unconvincing in regard to its first count. While Counts Two through Five involve non-technical factors external to §§ 1381–99, Count One does not. The core issue in that count, rather, is the propriety of imposing withdrawal liability on Plaintiff in light of the arguable fact that a labor dispute existed at the time fund payments ceased. This is a technical question and within the province of the § 1401 arbitration requirement. The *Colteryahn* court expressly provided that certain

> sections between 1381 and 1399 deal with employers who only contributed to a plan for a temporary period; suspensions of contributions during labor disputes; actuarial assumptions; and various exceptions. All of these are technical provisions.

847 F.2d at 118 n. 8.

Nor is Plaintiff entitled to bypass arbitration under a recognized exception for issues solely involving statutory interpretation and devoid of factual disputes. *See New York Teamsters Pen. & Ret. Fund v. McNicholas Transp. Co.,* 658 F.Supp. 1469 (N.D.N.Y. 1987) (rejecting application of exception in labor dispute context), *aff'd,* 848 F.2d 20 (2d Cir.1988). That court observed:

> In this case, there remain unresolved questions of fact concerning whether the ... strike was in any way causally related to defendant's decision to cease its operations in New York and to stop making contributions to the Fund. This is precisely the type of fact-based determination that arbitrators, who have had more experience than judges in dealing with the realities of labor-management relations and who have been afforded the luxury of more factfinding powers than is available to a district court, are best equipped to make.

*Id.* at 1474.

The scenario is the same in the case before this Court. Whether the impasse between

---

**1.** Arbitration in this case has been initiated by Plaintiff, as is noted above, but has yet to move beyond discovery. No hearing date is scheduled at this time.

**2.** Plaintiff notes that it has simultaneously filed for arbitration to challenge the calculations underlying the imposed withdrawal liability, and characterizes that challenge as distinct from the complaint filed in this Court.

Crown and the union constituted a labor dispute under the MPPAA remains unclear. Also unclear is whether the impasse—if indeed a labor dispute under the MPPAA—caused Crown to cease making fund payments. (Indeed, Crown would contend that it was Papale's unilateral communications to the Fund Defendants that led to the imposition of withdrawal liability, and that Crown in fact had no intention to cease contributing to the fund.) These issues involve disputes of fact and, like in *N.Y. Teamsters*, should be put to the expertise of an arbitrator.[3] Accordingly, Count One is deemed preempted by the § 1401 arbitration requirement and shall be dismissed.[4]

## B. NLRB Preemption

■ Defendants next argue that Counts Two through Five constitute challenges to the bargaining tactics of the union and/or its agents and therefore are subject to the exclusive jurisdiction of the National Labor Relations Board. According to the Union Defendants, Plaintiff's common law claims essen-

tially allege bad faith bargaining on the part of the union in general and Papale in specific. The Fund Defendants argue that the common law claim against them (Count Three) is similarly preempted by the NLRA.

Sections 8(b)(3) and 8(d) of the NLRA, as amended by the Labor Management Relations Act, 29 U.S.C. §§ 158(b)(3), (d), impose on parties to a collective bargaining agreement a duty to bargain in good faith.[5] Failure to adhere to this requirement constitutes an unfair labor practice. *Id.* § 158(b)(3).

Where a dispute arises over conduct that implicates Section 8, the matter is subject to the exclusive jurisdiction of the NLRB. *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 108, 110 S.Ct. 444, 449, 107 L.Ed.2d 420 (1989). Federal circuit courts (and, in limited circumstances, district courts) are authorized to review NLRB adjudications, 29 U.S.C. § 160(e)–(f), but, with limited exception, federal courts are without power to rule on Section 8 disputes before the NLRB has spoken.[6] This jurisdictional

---

3. While these disputed issues will likely be informed by both statutory interpretation and factual inquiry, "[a]ny doubt concerning fact/law differentiation as a means of determining whether arbitration is appropriate should be resolved in favor of arbitration." *Colteryahn*, 847 F.2d at 123 n. 17 (quoting *Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241, 1255 (3d Cir.1987)).

4. The Court is not persuaded by Plaintiff's contention that its available remedies under § 1401 are inadequate. As the Union Defendants point out in their reply brief, § 1401 grants the arbitrator authority to redress improper assessments of withdrawal liability. Moreover, if common law violations are ultimately found to exist in regard to the imposition of withdrawal liability, legal and/or equitable remedies will certainly be available to Plaintiff in this Court.

5. Section 8(b)(3) of the NLRA provides:
   (b) It shall be an unfair labor practice for a labor organization or its agents—
   . . . . .
   (3) to refuse to bargain collectively with an employer, provided it is the representative of his employees. . . .
   29 U.S.C. § 158(b)(3). Section 8(d) defines the scope of the respective parties' duty to bargain in good faith. It provides:
   (d) For purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representa-

tive of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession.
*Id.* § 158(d).

6. "[O]nly the narrowest of exceptions" entitle a plaintiff to avoid NLRB preemption. *NLRB v. California Horse Racing Board*, 940 F.2d 536, 540 (9th Cir.1991). These include cases involving allegations of NLRB abuse, *see Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and cases involving issues that do not threaten significant interference with the NLRB's jurisdiction or are of mere peripheral concern to the NLRB. *See Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (action for trespass during picketing); *Linn v. United Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (action for libel against union).

rule is applied broadly; all matters "arguably subject" to (i.e., arguably protected or prohibited by) Section 7 or 8 must go before the NLRB, who initially must determine if jurisdiction should vest with itself or the courts. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959) (characterizing deference to NLRB for such determinations as "essential to the administration" of the NLRA).[7]

In this case, Defendants argue that Counts Two through Five, while pleaded as common law claims arising under ERISA, all relate to allegations of unfair labor practices, in that the alleged misconduct occurred during the course of a labor dispute between Crown and the union. (Crown effectively concedes this point by arguing that the existence of a labor dispute should have shielded it from withdrawal liability.) Defendants contend that the nexus between Plaintiff's allegations and the labor dispute in existence at the time is sufficient to satisfy the "arguably subject" standard created in *Garmon*. *See Genesco, Inc. v. Joint Council 13, United Shoe Workers*, 230 F.Supp. 923, 930 (S.D.N.Y.1964) (holding standard satisfied where alleged acts of misconduct "appear to be predicated on activities that were part and parcel of … labor dispute"), *aff'd*, 341 F.2d 482 (2d Cir. 1965).

The *Garmon* preemption doctrine is, as Plaintiff points out, subject to exceptions of its own. Courts have refrained from dismissing claims under *Garmon* where the underlying claim is not identical with, or does not fall within the normal purview of, an analogous NLRB claim. *See Sears, Roebuck*, 436 U.S. at 190–208, 98 S.Ct. at 1754–1763 (analyzing *Garmon* preemption in the context of both arguably *prohibited* and arguably *protected* conduct).

In discussing whether *Garmon* preemption applies to conduct arguably prohibited by Section 8 that occurs during a labor dispute, the Supreme Court in *Sears, Roebuck* explained why it had ruled against preemption in a similar case, *Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977):

> [In *Farmer*,] although the challenged conduct occurred in the course of a labor dispute and an unfair labor practice charge could have been filed, the exercise of state jurisdiction over the tort claim [for intentional infliction of emotional distress] entailed little risk of interference with the regulatory jurisdiction of the Labor Board. Although the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums would not have been the same.

*Sears, Roebuck*, 436 U.S. at 196–97, 98 S.Ct. at 1757.[8]

According to Crown, this "peripheral relevance" test used in *Farmer* is not determinative in regard to Crown's complaint because Crown's claims are based upon an independent statutory basis: Section 1398(2) of ERISA. That is, Crown argues that its entire complaint stems from alleged violations of ERISA in that Defendants acted to subject Crown to withdrawal liability during a labor dispute in violation of § 1398. This characterization is, in the Court's view, only partly accurate.

While § 1398 creates the labor dispute exception to withdrawal liability, the actions attributed to the Union Defendants do not violate § 1398 per se. A more precise analysis would be that § 1398 *shields* an employer from a union's efforts to impose withdrawal liability during a labor dispute, but that the section does not create an affirmative cause of action against the union for involving itself in such conduct.[9] The instant case is thus

---

**7.** While generally discussed in the context of state court review, the scope of *Garmon* preemption extends to the federal courts. *Id.* at 245, 79 S.Ct. at 779.

**8.** Inasmuch as *Garmon* applies to federal forums as well, the relevant question herein is whether the controversies now before this court are effec-

tively the same as that which would be put to the NLRB.

**9.** Nor is this Court inclined to create a common law cause of action under ERISA. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (stating that "courts are to develop a 'federal common law of rights and obligations under ERISA–

not analogous to cases cited by Plaintiff in which courts have allowed NLRA-related disputes to proceed on the grounds that another federal statute independently proscribed the alleged conduct. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (retaining breach of duty of fair representation claim under 29 U.S.C. § 185(a)); *United States v. Boffa*, 688 F.2d 919 (3d Cir.1982) (retaining labor-related fraud claims under RICO), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983). Accordingly, Crown's contention that its claim escapes preemption because it arises under an independent statute is misplaced in regard to the Union Defendants.[10]

■ The result is different, however, in regard to the Fund Defendants. While the creation of a common law cause of action is not warranted as against union representatives who seek to trigger withdrawal liability, *see* footnote 9, *supra*, such action should be

available against a pension fund whose breach of fiduciary duty to an employer results in the wrongful imposition of withdrawal liability. "Precisely because withdrawal liability can visit untold ruin upon an employer ..., any premature assertions of withdrawal liability must be scrupulously guarded against." *T.I.M.E.—DC v. New York State Teamsters Conference Pension & Retirement Fund*, 580 F.Supp. 621, 629 (N.D.N.Y.), *aff'd*, 735 F.2d 60 (2d Cir.1984). To this end, at least one court has recast § 1398 into an affirmative obligation on any fund seeking to impose withdrawal liability:

> [A] fund that seeks to assert withdrawal liability against an employer claiming to fit within the labor dispute exception has, at minimum, a duty to undertake an inquiry of the factual circumstances. This rule is derived from the long-established requirement that pension funds act independently

---

regulated plans'") (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)). While such a route is available to the courts, it should only be utilized when "necessary to effectuate the purposes of ERISA." *U.S. Steel Mining Co. v. District 17, United Mine Workers*, 897 F.2d 149, 153 (4th Cir.1990); *accord Van Orman v. American Ins. Co.*, 680 F.2d 301, 311–12 (3d Cir.1982).

It is doubtful that such law-making authority, chiefly intended to clarify the rights and obligations of ERISA fiduciaries, *see Bruch*, 489 U.S. at 110, 109 S.Ct. at 954, would be well utilized by creating common law causes of action against unions and/or their officials who, in the course of negotiating with an employer, depart from their duty to bargain in good faith by seeking to affect that which is technically out of its control—in this case, the imposition of withdrawal liability. Such rulemaking would be redundant in light of the available remedies. That is to say, an employer is currently protected from both the union's bad faith conduct (vis a vis NLRB proceedings) and from improper imposition of withdrawal liability (vis a vis § 1398). Limiting Crown to these remedies against the Union Defendants will restrict the relief available to it, but the same can be said about most all NLRB disputes, *see Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 552–53, 108 S.Ct. 830, 837–838, 98 L.Ed.2d 936 (1988) (discussing same); this limitation is an intended product of a comprehensive legislative scheme and is no justification for allowing Plaintiff to bypass *Garmon*.

**10.** Nor do the allegations against the Union Defendants satisfy the "peripheral relevance" test

employed in *Farmer*. On the contrary, whether the Union Defendants committed common law violations in the course of their negotiations with Crown seems an inseparable question from that of whether they committed unfair labor practices. Indeed, the most obvious affirmative defense to the common law allegations against the Union Defendants is that their alleged conduct is *protected* under the NLRA. Regardless of whether such a defense is ultimately deemed meritorious, its relevance is plainly apparent to the Court. In sum, any forum faced with adjudicating Crown's claims would have to determine whether the Union Defendants' conduct constituted protected or unfair labor practices; that alone separates this case from *Farmer*.

Plaintiff cites *Sears, Roebuck* as an example of a court allowing a claim to bypass preemption despite the fact that the defendants' alleged conduct (trespass) was arguably protected by the NLRA. That case is not analogous. Crucial to the *Sears, Roebuck* decision was the fact that Sears had no "reasonable opportunity either to invoke the [NLRB]'s jurisdiction [it]self or else to induce [its] adversary to do so." 436 U.S. at 201, 98 S.Ct. at 1759. "Only by proceeding in state court ... could Sears obtain an orderly resolution of the question whether the Union had a federal right to remain on its property." *Id.* at 202, 98 S.Ct. at 1760. In the instant case, however, Crown could have challenged the Union Defendants' conduct by initiating a proceeding before the NLRB. Thus while the "primary jurisdiction" rationale of *Garmon* did not justify preemption in *Sears, Roebuck*, *id.* at 201, 98 S.Ct. at 1759, it does in this case.

of the interests of both management and labor.

*T.I.M.E.—DC v. Trucking Employees of North Jersey Welfare Fund, Inc.*, 560 F.Supp. 294, 303 (E.D.N.Y.1983).

Failure to conduct a good faith inquiry prior to imposing withdrawal liability is, in this Court's view, sufficient grounds for holding a fund liable under a common law breach of duty theory pursuant to ERISA. *See* footnote 9, *supra*, and cases cited therein. Unlike the Union Defendants, the Fund Defendants directly control whether or not withdrawal liability is to be imposed. Plaintiff should be entitled to recourse for any misconduct on the part of the Fund Defendants in making this determination.[11] Accordingly, an affirmative remedy against a pension fund for a breach of duty relating to § 1398 is deemed "necessary to effectuate the purposes of ERISA." *U.S. Steel Mining Co.*, 897 F.2d at 153. The Court will thus dismiss the common law claims against the Union Defendants (Counts Two, Four, and Five),[12] but will allow the common law claim against the Fund Defendants (Count Three) to remain.[13]

### III. Conclusion

For the forgoing reasons, the Court shall dismiss Counts One, Two, Four, and Five.

11. Arbitration of the propriety of withdrawal liability, while sufficient to resolve the Count One claim, will not provide a satisfactory determination as to whether the Fund Defendants breached a duty owed to Plaintiff by conspiring with the Union Defendants or by failing to adequately investigate the matter. Moreover, these issues are not "technical" in nature and therefore are likely inappropriate for MPPAA arbitration.

12. Because the Court is dismissing these counts on grounds of preemption, it is unnecessary to consider the individual arguments raised by the Defendants relating to Plaintiff's alleged failure to state a claim as to each. For the same reasons, the Court need not address the personal jurisdiction issue raised in regard to Union Defendant Papale.

13. In so holding, the Court rejects the contention of the Fund Defendants that Plaintiff fails to state a claim in Count Three. This argument is based on the premise that, whether or not Plaintiff's withdrawal was voluntary or involuntary, the Fund had no choice but to assess withdrawal liability. In light of the conclusions reached above in regard to the affirmative duties of a

Should the NLRB ultimately determine, however, that jurisdiction does not lie before that body, Plaintiff will be afforded the opportunity to refile Counts Two, Four, and Five in this Court.

Additionally, because the MPPAA arbitrator's determination in regard to withdrawal liability may inform the ultimate outcome of Count Three, the Court shall stay the proceedings as to Count Three until arbitration of Count One is completed.

### ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, OR TO STAY PROCEEDINGS

This matter having come before the Court on the motion of defendants Carmen Papale and the Baltimore Regional Joint Board, Amalgamated Clothing and Textile Workers Union, AFL–CIO–CLC, (the "Union") to dismiss or for summary judgment, and on the motion of defendants Amalgamated Life Insurance Company, Amalgamated Insurance Fund, and Jeffrey Warbet to dismiss, for summary judgment, or to stay proceedings; and

pension fund, the Fund Defendants' argument is clearly without merit. Plaintiff is entitled an opportunity to prove at trial that the Fund Defendants either conspired with the Union Defendants to impose withdrawal liability or that they failed to properly investigate the propriety of withdrawal liability on their own.

Nor is summary judgment warranted as to Count Three. The evidence before the Court—namely memos, letters, and deposition testimony from Fund Defendant Warbet and Fund Vice-President Burker—creates material issues of fact as to whether the Fund breached its duty by way of conspiracy *or* by failure to properly investigate. (While there appears to be no evidence supporting a conspiracy claim against Fund Defendant Warbet, there is evidence to support a breach of duty claim in regard to his alleged failure to investigate the applicability of the labor dispute exemption as advanced by Crown.)

Having identified "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), the Court finds that Count Three survives summary judgment scrutiny.

**324**

The Court having considered the submissions of the parties; and

For the reasons stated in the Court's Opinion of this date;

**IT IS** on this 6th day of June 1994 hereby

**ORDERED** that the motion of defendants Papale and the Union is **GRANTED;** and

It is **FURTHER ORDERED** that **COUNTS TWO, FOUR,** and **FIVE** are **DISMISSED,** without prejudice to Plaintiff to refile the same counts should the NLRB determine that jurisdiction properly rests with this Court; and

It is **FURTHER ORDERED** that the motion of Warbet and the Amalgamated defendants is **GRANTED** in part and **DENIED** in part, in that:

(1) **COUNT ONE** is **DISMISSED,** without prejudice to either party to refile an action in this Court subsequent to arbitration, pursuant to 29 U.S.C. § 1401(b)(2), to enforce, vacate, or modify the arbitrator's findings; and

(2) **COUNT THREE** is **STAYED** until arbitration of Count One is completed, at which time proceedings as to Count Three shall recommence.

No costs.