**Phyllis STINSON, Plaintiff,**

v.

**DELAWARE RIVER PORT AUTHORITY, et al., Defendants.**

**Civil Action No. 94–5572.**

United States District Court, D. New Jersey.

Aug. 2, 1996.

Phyllis Stinson, Willingboro, New Jersey, pro se.

William Tambussi, Brown & Connery, Westmont, New Jersey, for Defendant, Delaware River Port Authority.

Mario A. Iavicoli, Haddonfield, New Jersey, for Defendant, International Union of Operating Engineers, Local 716.

Raymond G. Heineman, Kroll & Heineman, West Orange, New Jersey, for Defendant, International Union of Operating Engineers, AFL–CIO.

ORLOFSKY, District Judge:

Defendants, Delaware River Port Authority ("DRPA"), International Union of Operating Engineers, AFL–CIO ("International Union"), and International Union of Operating Engineers, Local 716, AFL–CIO ("Local Union"), have moved for summary judgment on Plaintiff's complaint, pursuant to Fed. R.Civ.P. 56.

The issues presented by the Defendants' motions raise the following questions: (1) whether the DRPA's termination of Plaintiff's employment was in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*; (2) whether the Plaintiff is an "employee" and the DRPA is an "employer" within the meaning of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. §§ 141 *et seq.*; and (3) if the Plaintiff is an "employee" and the DRPA is an "employer" within the meaning of the LMRA, whether the DRPA, the Local Union, or the International Union, violated any duties owed to the Plaintiff under the LMRA.

The resolution of questions two and three above depends, in turn, upon whether the DRPA is a "political subdivision" within the meaning of the LMRA, an issue of first impression in the Third Circuit. For the reasons that follow, I conclude that the DRPA is a "political subdivision" within the meaning of the LMRA, and Plaintiff has failed to establish a *prima facie* case of discrimination under Title VII. Therefore, Defendants' motions for summary judgment will be granted.

## I. Facts and Procedural History

The material facts presented to the Court in the summary judgment record are largely uncontested. Plaintiff, Phyllis Stinson, was employed by the DRPA as a toll collector from September, 1980, until her discharge in March, 1993. (Deposition of Phyllis Stinson ("Stinson Dep.") at 6, attached to International Union of Operating Engineers AFL–CIO's Brief in Support of Summary Judgment ("Union's Brief") as Exhibit 4).

On February 23, 1993, Plaintiff was absent from work at the DRPA, allegedly due to illness. (DRPA Memorandum, dated February 24, 1993, attached to DRPA's Brief in Support of Summary Judgment ("DRPA's Brief") as Exhibit E). The DRPA requires that employees absent due to illness, injury, or other medical condition provide a physician's note documenting the reason for the absence. Pursuant to this policy, Plaintiff's supervisor, Senior Lieutenant Mary L. Johnson ("Johnson"), requested a physician's note from Plaintiff when she returned to work on February 24, 1993. (*Id.*) In response to Johnson's request, Plaintiff stated that she had left her physician's note in her car and would retrieve the note and bring it to Johnson later that day. (*Id.*)

Plaintiff did provide Johnson with a physician's note from the offices of Lockart, Chao, Rashid, and Knox, an obstetrician and gynecological office. The note, allegedly signed by Dr. Knox, stated that Plaintiff suffered from and was treated for symptoms of influenza. (*See* DRPA's Brief, Exhibit C). The note, however, was dated October 23, 1993, a date eight months into the future. (*Id.*)

Because of this discrepancy, Johnson telephoned Dr. Knox's office and was told not only that the Plaintiff had not been treated by Dr. Knox on February 23, 1993, but that she had never been a patient of Dr. Knox, or any other physician in that office. (*Id.; see also* letter from Dr. Knox's office, dated February 25, 1993, attached to DRPA's Brief as Exhibit D).

Following this discovery, the DRPA undertook a review of several other physician's notes submitted by Plaintiff to document her

absences due to illness from the DRPA. (DRPA Memorandum, dated March 3, 1993, attached to DRPA's Brief as Exhibit E). The DRPA discovered that during the preceding twelve months, the Plaintiff had submitted twelve additional physician's notes from Dr. Knox's office on Lockart, Chao, Rashid and Knox stationery. (*Id.; see also* DRPA Brief, Exhibit C). Upon further examination of these notes, the DRPA noticed that the notes had been copies, did not have original signatures, and that many contained altered dates. (DRPA Memorandum, dated March 3, 1993, attached to DRPA's Brief as Exhibit E; *see also* DRPA Brief, Exhibit C). Dr. Knox's office confirmed, once again, that Plaintiff was not a patient of any physician in that office and had not been seen by any physician at Lockart, Chao, Rashid and Knox on the dates contained in the twelve notes. (*See* DRPA Interview of Lockart, Chao, Rashid and Knox's Office Manager at 1, attached to DRPA's Brief as Exhibit G).

The DRPA then commenced an investigation regarding the authenticity of the physician's notes submitted by Plaintiff during the preceding year. In an interview with the DRPA on March 4, 1993, Plaintiff admitted that she had falsified at least one of the thirteen physician's notes. (DRPA Interview of Phyllis Stinson at 10, attached to DRPA's Brief as Exhibit H). On March 10, 1993, after completing the investigation and concluding that the Plaintiff had submitted thirteen false physician's notes in an attempt to justify absences from work at the DRPA, the DRPA discharged Plaintiff for violation of DRPA Work Rule 3B(11). (DRPA Employee Termination Report, attached to DRPA's Brief as Exhibit I).

At the time of Plaintiff's employment with the DRPA, DRPA Work Rule 3B(11) provided in relevant part that:

> Offenses for which an employee may be subject to immediate dismissal include ... Fraud or Falsification of DRPA records, including any reports oral or written required of any employee by the DRPA;

knowingly giving false information to a supervisor or assisting others to do so in any way.

(Letter dated March 11, 1993 from George Warrington to Phyllis Stinson, attached to DRPA's Brief as Exhibit N).

During her employment at the DRPA, Plaintiff was a member of Defendant, Local Union, and was covered by a collective bargaining agreement between the DRPA and the Local Union. As a member of the Local Union, Plaintiff was also a member of the International Union. (Stinson Dep. at 6–7).

After the DRPA's termination of her employment, the Local Union filed three levels of grievances on behalf of Plaintiff, contesting her discharge, and was unsuccessful at each grievance level. (Stinson Dep. at 24–29). Dissatisfied with the Local Union's representation during the grievance proceedings, Plaintiff sought representation by someone from the International Union. (Affidavit of James Van Dyke ("Van Dyke Aff."), Exhibit C). By letter dated May 27, 1993, International Union President Hanley informed the Plaintiff that the International Union could not intervene in this instance, as the International Union was not a party to the collective bargaining agreement between the DRPA and the Local Union. (*Id.*, Exhibit D).

Plaintiff filed her initial complaint in federal court solely against the DRPA on April 26, 1994, in the United States District Court for the Eastern District of Pennsylvania.[1] Pursuant to the DRPA's motion for a change of venue, this action was transferred to this Court. In her original complaint, Plaintiff alleges that in terminating her employment, the DRPA discriminated against her "gender wise" in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* Complaint ¶ 3. Plaintiff also contends in her original complaint that her discharge was in violation of the Labor–Management Relations Act, 29 U.S.C. §§ 141 *et seq.* (*Id.*).

On February 13, 1996, Plaintiff sought and was granted leave to file an amended com-

---

**1.** Prior to filing her complaint in federal court, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (DRPA's Brief, Exhibit J). On March 28, 1994, the EEOC issued a determination that there was insufficient evidence to support a charge of discrimination. (*Id.*, Exhibit K).

plaint to include a claim against the DRPA for breach of the collective bargaining contract, and a claim against the Local Union and the International Union for breach of their duty of fair representation in violation of the Labor–Management Relations Act, 29 U.S.C. §§ 141 et seq. (Amended Complaint at 1–2). In her amended complaint, Plaintiff does not reiterate her initial claims against the DRPA, contained in her original complaint. As such, Plaintiff's amended complaint merely supplements, and does not supersede her original complaint.

Defendant, DRPA, has moved for summary judgment on all of Plaintiff's claims against it. Defendants, Local Union and International Union, have also moved for summary judgment on Plaintiff's claims against them contained in Plaintiff's amended complaint. For the reasons set forth below, Defendants' respective motions for summary judgment will be granted.

## II. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he or she] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Hersh v. Allen Products, Co., 789 F.2d 230, 232 (3d Cir.1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983). A district court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir.1996). In deciding whether there is a disputed issue of material fact the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party. See Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. denied, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Under this rule, a defendant must be awarded summary judgment on all properly supported issues identified in its motion, except for those for which a plaintiff has provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). A summary judgment movant may meet its burden by showing that the opposing party is unable to meet its burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Nonetheless, defendants, as the moving parties on the motion, bear the initial responsibility of demonstrating the absence of a genuine issue of material fact. Id.

## III. Discussion

### A. Plaintiff's LMRA Claims

Plaintiff asserts claims based upon the LMRA against all the Defendants. First, Plaintiff contends that, in terminating her employment, the DRPA breached the collective bargaining agreement between the DRPA and the Local Union. Plaintiff also claims that both the Local Union, and the International Union breached their duty of fair representation under the LMRA.

(Amended Complaint at 1–2). Such claims are cognizable in a district court under section 301 of the LMRA, 29 U.S.C. § 185.[2]

A district court is vested with jurisdiction to adjudicate claims brought pursuant to section 301 of the LMRA. Section 301 provides in relevant part that:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

> (b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States.

29 U.S.C. § 185(a) and (b).

As a threshold matter, Plaintiff's ability to sue either her employer or her labor union under the LMRA is contingent upon her status as an "employee," and DRPA's status as an "employer," within the meaning of the LMRA. Section 501(3) of the LMRA cross references the definitions of "employee" and "employer" for purposes of the LMRA to the definitions provided in section 2 of the National Labor Relations Act ("NLRA"). 29 U.S.C. § 142(3).

Section 2 of the NLRA provides in relevant part that the term "employee" shall mean "any employee … but shall not include any individual employed … by any other person who is not an employer as herein defined." 29 U.S.C. § 152(3). "Employer," in turn, is defined as "any person acting as an agent of an employer … *but shall not include … any State or political subdivision thereof.*" 29 U.S.C. § 152(2) (emphasis supplied). *See Crilly v. Southeastern Pennsylvania Transportation Authority,* 529 F.2d 1355 (3d Cir.1976) (holding SEPTA to be a "political subdivision" and therefore not an employer within the meaning of § 152(2)).

Accordingly, whether the Defendants are amenable to suit under the LMRA depends upon whether the the DRPA is a "political subdivision" of a state, and therefore, not an "employer" within the meaning of the LMRA. Although the term, "political subdivision," is not defined in the statute, the United States Supreme Court has held that an entity is a political subdivision of a state, and therefore exempt from the substantive provisions of both the NLRA and the LMRA if such entity was "either (1) created directly by the state, so as to constitute [a] department [ ] or administrative arm [ ] of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *NLRB v. Natural Gas Util. Dist.,* 402 U.S. 600, 604–605, 91 S.Ct. 1746, 1749–1750, 29 L.Ed.2d 206 (1971).

While the Court of Appeals for the Third Circuit has found entities similar to the DRPA to be "political subdivisions" within the meaning of 29 U.S.C. § 152(2), *see, e.g., Crilly,* 529 F.2d 1355, the issue of whether the DRPA constitutes a "political subdivision," is one of first impression. Several courts, however, have found other Port Authorities to be "political subdivisions" exempt from federal labor laws. *See South Carolina State Ports Authority v. NLRB,* 1989 WL 201258 (D.S.C. Nov. 15, 1989), *rev'd on other*

---

**2.** Although the Plaintiff asserts in both her complaint and her amended complaint that the Defendants violated sections 158 and 159 of Title 29, claims brought under these sections are within the exclusive jurisdiction of the National Labor Relations Board, and therefore, this Court is without subject matter jurisdiction to adjudicate these claims. *See Confederated Independent Unions v. Rockwell,* 465 F.2d 1137 (3d Cir.1972); *Crown Clothing Co. v. Papale,* 854 F.Supp. 316

(D.N.J.1994); *Rupinsky v. Miller Brewing Co.,* 627 F.Supp. 1181 (W.D.Pa.1986). Because Plaintiff's claims are cognizable in this Court under section 301 of the LMRA, 29 U.S.C. § 185, this Court will treat her claims as such. *Cf. Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding allegations of *pro se* plaintiff to a less stringent standard than formal pleadings drafted by lawyers).

*grounds,* 914 F.2d 49 (4th Cir.1990), (holding South Carolina Ports Authority to be a "political subdivision" of South Carolina and thus immune from suit under NLRA); *Brown v. Port Auth. Police Superior Officers Assoc.,* 283 N.J.Super. 122, 130–133, 661 A.2d 312 (App.Div.1995) (New York—New Jersey Port Authority found to be "political subdivision" under NLRA); *Local 1526, International Longshoremen's Association, AFL–CIO v. Broward County Port Authority,* 183 So.2d 257 (Fla.App.1966) (holding Broward County Port Authority to be exempt from definition of employer under NLRA); *Delaware River and Bay Authority v. International Organization of Masters, Mates & Pilots,* 45 N.J. 138, 211 A.2d 789 (1965) (finding Delaware River and Bay Authority, a bistate agency of New Jersey and Delaware, to be "political subdivision"); *International Longshoremen's Association, AFL–CIO v. Georgia Ports Authority,* 217 Ga. 712, 124 S.E.2d 733, *cert. denied,* 370 U.S. 922, 82 S.Ct. 1561, 8 L.Ed.2d 503 (1962) (finding Georgia Ports Authority to be a "political subdivision" of the state and therefore exempt from NLRA).

Applying the test set forth by the United States Supreme Court in *Natural Gas,* 402 U.S. at 604–605, 91 S.Ct. at 1749–1750, the Superior Court of New Jersey, Appellate Division, recently found the Port Authority of New York and New Jersey to be both a department or administrative arm of the government, and administered by individuals who are responsible to public officials or to the general electorate, and thus a "political subdivision" of the states of New York and New Jersey immune from suit under the NLRA. *Brown,* 283 N.J.Super. at 130–133, 661 A.2d 312 (noting that only one of the two prongs of the *Natural Gas* test needs to be met in order for an entity to be found to be a "political subdivision"). In so holding, the court noted the following characteristics of the Port Authority of New York and New Jersey which weighed in favor of its finding the Port Authority to be a "political subdivision": (1) the Port Authority of New York and New Jersey was created by a bi-state compact enacted into law by the legislatures of New York and New Jersey; (2) it is administered by commissioners, all of whom

are appointed by one of the compact states; (3) any proposed action of the Port Authority of New York and New Jersey is subject to veto by the governors of the compact states; (4) the power of eminent domain of the Port Authority of New York and New Jersey; and (5) the Port Authority's property, as well as income from the Port Authority's bonds and other obligations, are exempt from state and local taxation. *Id.* at 130, 661 A.2d 312. *See also South Carolina State Ports Authority,* 1989 WL 201258, * 3 (holding that such factors as the South Carolina State Ports Authority's statutory creation, its power of eminent domain, its immunity to taxes, and the fact that its members are appointed and can be removed by the Governor, warranted a finding that Ports Authority was a "political subdivision"); *Crilly,* 529 F.2d 1355 (finding SEPTA's power of eminent domain, the fact that its board members are appointed by the governor, and that it was created by an act of the state legislature rendered it a "political subdivision").

■ In this case, applying the above criteria to the DRPA, it is apparent that the DRPA possesses all of the relevant characteristics which have qualified other Port Authorities as "political subdivisions" within the meaning of 29 U.S.C. § 152(2). The DRPA was created as a "public corporate instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey" by an interstate compact entered into by New Jersey and Pennsylvania and enacted into law by both New Jersey and Pennsylvania. *See* N.J.S.A. §§ 32:3–1 to 3–2. In addition, the DRPA is administered by commissioners, all of whom are appointed by the Governor of either New Jersey or Pennsylvania, *see* N.J.S.A. §§ 32:3–3 to 3–4, and any proposed action of the DRPA is subject to veto by the governors of New Jersey or Pennsylvania. *See* N.J.S.A. § 32:3–4. Further, the DRPA is vested with the power of eminent domain. *See* N.J.S.A. § 32:3–6. Finally, property of the DRPA is exempt from tax, as is income from the DRPA's bonds and other obligations. *See* N.J.S.A. § 32:3–12.

Applying the *Natural Gas* test to the undisputed facts of this case, I conclude that the DRPA is a department or administrative

arm of the government, and administered by individuals who are responsible to public officials, or to the general electorate, and therefore, the DRPA is a "political subdivision" within the meaning of 29 U.S.C. § 152(2). *See Natural Gas,* 402 U.S. at 604–605, 91 S.Ct. at 1749–1750.

Having found that the DRPA is a "political subdivision," it follows that the DRPA cannot be an "employer" and the Plaintiff cannot be an "employee" within the meaning of sections 152(2) and (3), respectively, of the LMRA. Since the Plaintiff is not an "employee" under the LMRA, this Court lacks subject matter jurisdiction over Plaintiff's claims against any of the Defendants under the LMRA. *See Jackson v. Temple University of the Commonwealth System of Higher Education,* 721 F.2d 931, 933 (3d Cir.1983) (finding that district court erred in failing to dismiss public employee's LMRA claims against public employer for lack of subject matter jurisdiction). The Court will therefore grant Defendants summary judgment on Plaintiff's respective LMRA claims against the Defendants in both her complaint and her amended complaint.

### B. *Plaintiff's Title VII Claims*

▇▇▇▇▇ In her complaint against the DRPA, Plaintiff alleges that her "firing was discriminatory gender wise (sic) in violation of Civil Rights Act of 1964, Title VII." (Complaint ¶ 34). In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the United States Supreme Court established the basic framework for the allocation of the burden of proof in an employment discrimination case. In a discriminatory discharge claim brought under Title VII, the law places the initial burden of production on the plaintiff to establish a *prima facie* case of discrimination. *Id.; see also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–507, 113 S.Ct. 2742, 2746–2747, 125 L.Ed.2d 407 (1993). Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discharge. *Hicks,* 509 U.S. at 506–507, 113 S.Ct. at 2746–2747. Ultimately, if steps one and two are satisfied,

the plaintiff must show that the defendant's proffered reasons for the discharge are not worthy of belief and that the defendant acted with the intent to discriminate. *See McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–1825; *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 200–02 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

▇▇▇▇ A defendant is entitled to summary judgment on a plaintiff's claim for discriminatory discharge under Title VII if it can demonstrate that: (1) the plaintiff is unable to establish a *prima facie* case of discriminatory discharge; or (2) if plaintiff can establish a *prima facie* case, the plaintiff cannot produce sufficient evidence of pretext to rebut the defendant's asserted legitimate reason for discharge. *See Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994); *Jalil v. Avdel Corp.,* 873 F.2d 701, 706–07 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). In this case, the DRPA is entitled to summary judgment on Plaintiff's discriminatory discharge claim for both of the above reasons.

▇▇▇▇ In order to establish a *prima facie* case for discriminatory discharge, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was qualified for the position from which he or she was discharged; and (3) non-members of the protected class were treated more favorably. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The DRPA does not dispute that the Plaintiff, as a woman, is a member of a protected class, or that she was qualified for the position from which she was discharged. The DRPA, contends, however, that Plaintiff is unable to establish a *prima facie* case of discriminatory discharge since she is unable to show that the DRPA treated non-members of her protected class more favorably.

Plaintiff has admitted that she submitted at least one fraudulent physician's note to the DRPA in an attempt to justify her absence from work at the DRPA. (Stinson Dep. at 84–85). The DRPA contends, and the Plaintiff concedes, that such conduct constitutes a violation of DRPA Work Rule 3B(11) and subjects the employee to immediate dismiss-

al. (*Id.*; DRPA Memorandum, dated March 3, 1993, attached to DRPA's Brief as Exhibit E). Indeed, the DRPA claims that Plaintiff was discharged after she was found to have violated Work Rule 3B(11) on thirteen different occasions. (DRPA Termination Report, attached to DRPA Brief as Exhibit I).

■ Plaintiff asserts, however, that the DRPA discriminated against her because she was treated differently than male employees at the DRPA, who had also violated Work Rule 3B(11). In support of her assertion, Plaintiff points to the treatment of Glenn Smith, another DRPA employee. Mr. Smith was suspended for 15 days without pay after he was found to have violated Work Rule 3B(11) when the DRPA discovered that he was working for another employer part-time while on leave from the DRPA due to injury. (DRPA Letter to Mr. Smith, dated February 24, 1993, attached to DRPA's Brief as Exhibit Q). Plaintiff contends that the DRPA discriminated against her by discharging her for violating Work Rule 3B(11), and only suspending Mr. Smith for his violation of the same work rule.

The undisputed evidence contained in the summary judgment record, however, reveals that Mr. Smith was not, in fact, similarly situated to Plaintiff, and therefore, his conduct and resulting discipline are not relevant to Plaintiff's claim of discrimination. The disparity in the number of violations distinguishes Mr. Smith from the Plaintiff. Mr. Smith was found to have violated Work Rule 3B(11) *one* time, while the Plaintiff was found to have violated the rule at least *thirteen* times.

■ Plaintiff also contends that the DRPA did not terminate other male employees who violated other DRPA Work Rules by falling asleep and consuming alcohol while on the job. (Stinson Dep. at 73–75). Such employees are likewise not similarly situated to the Plaintiff in that these alleged infractions of work rules are dramatically different in kind and magnitude from those committed by the Plaintiff. Therefore, Plaintiff has not pointed to any evidence contained in the summary judgment record which reflects that any similarly situated male employees of the DRPA were treated more favorably than the Plaintiff. Accordingly, I find that the Plaintiff has failed to establish a *prima facie* case of gender discrimination under Title VII. *See Bellissimo v. Westinghouse Electric Corp.,* 764 F.2d 175 (3d Cir.1985), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986) (summary judgment granted in favor of employer where female employee failed to show that any similarly situated male employees were treated differently).

■ Even if the Plaintiff had been able to establish that the DRPA had treated similarly situated male employees more favorably, and thereby establish a *prima facie* case of discrimination, I find that the DRPA has set forth evidence of a legitimate non-discriminatory reason for her discharge. The DRPA claims that it discharged the Plaintiff as a result of her falsification of numerous physician's notes in violation of DRPA Work Rule 3B(11). Such a reason for discharge is both legitimate and non-discriminatory. *See, e.g., Emmett v. L.T.V. Aerospace and Defense Co.,* 784 F.Supp. 1390 (W.D.Ark.1992) (employee's falsification of records held to be a legitimate non-discriminatory reason for discharge).

■ Given the DRPA's presentation of a legitimate non-discriminatory reason for discharging the Plaintiff, the burden then shifts to the Plaintiff to show that the DRPA's reasons for terminating her are a mere pretext for discrimination. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *McDonnell Douglas,* 411 U.S. at 803–804, 93 S.Ct. at 1824–1825; *Fuentes,* 32 F.3d at 764.[3] Pretext may be

---

**3.** This Court recognizes that there is still an ongoing debate in this Circuit as to whether *Hicks* allows a plaintiff to survive summary judgment on the strength of his or her *prima facie* case, combined with a showing of pretext, or whether, when "the defendant satisfies its production burden … the court should decide whether … the evidence … taken together could persuade a reasonable trier of fact by a preponderance of the evidence that discrimination on the ground alleged was a determinative cause of the challenged action." *Sheridan v. E.I. duPont de Nemours & Co.,* 1996 WL 36283, *11 (3d Cir.1996), *vacated and reh'g in banc granted*

shown " 'directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence.' " *United States Postal Service v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (citing *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095).

To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken ... Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.

*Fuentes,* 32 F.3d at 765.

■ Moreover, Plaintiff cannot "avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations." *Id.* at 764. Instead, in order to avoid summary judgment, Plaintiff must point to " 'some' evidence from which a factfinder could reasonably conclude that the proffered reasons were fabricated." *Id.*

■ In this case, the summary judgment record is devoid of any evidence whatsoever to discredit the DRPA's proffered reason for Plaintiff's discharge, or to show that the reason is unworthy of belief. Plaintiff's mere unsubstantiated allegations are insufficient to defeat summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts").

Accordingly, for the reasons set forth above, this Court will also grant summary judgment on Plaintiff's Title VII claims against the DRPA. This Court will enter an appropriate order.

(February 28, 1996). Until this debate is resolved through the Third Circuit's reconsideration *in banc* of the panel decision in *Sheridan,*

## ORDER

This matter having come before the Court on August 2, 1996, on the motions of Defendants, Delaware River Port Authority, International Union of Operating Engineers, Local 716, and International Union of Operating Engineers, AFL–CIO, for summary judgment, Plaintiff, Phyllis Stinson, appearing *pro se,* William Tambussi, Esq., of Brown & Connery, appearing on behalf of Defendant, Delaware River Port Authority, Mario A. Iavicoli, Esq., appearing on behalf of Defendant, International Union of Operating Engineers, Local 716, and Raymond . G. Heineman, Esq., of Kroll & Heineman, appearing on behalf of Defendant, International Union of Operating Engineers, AFL–CIO; and

The Court having considered the Plaintiff's complaint and amended complaint, the Defendants' answer thereto, as well as the briefs and affidavits of the parties filed in support of, and in opposition to Defendants' motions;

For the reasons set forth in this Court's Opinion filed with this Order;

IT IS HEREBY ORDERED on this 2nd day of August, 1996, that Defendants' motions for summary judgment are GRANTED.

this Court is bound to follow *Fuentes*. *Sheridan,* at \*1.