**Sharon HIRSCH for the ESTATE OF Paul HIRSCH, Plaintiff,**

**v.**

**NATIONAL MALL & SERVICE, INC., and Photo–Vend, Inc., Defendants.**

No. 95 C 1700.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 20, 1997.

Frank John Saibert, Karen J. Fellows, Matkov, Salzman, Madoff & Gunn, Chicago, IL, for Plaintiff.

William J. Provenzano, William J. Provenzano & Associates, Libertyville, IL, for Defendants.

### *MEMORANDUM AND OPINION*

MORAN, Senior District Judge.

Paul Hirsch (Hirsch) was an employee of Photo–Vend, Inc. (Photo–Vend) for thirty-two years before he was terminated in July or August of 1994. National Mall & Service, Inc. (National–Mall) is a company related to Photo–Vend by common ownership or management. In response to his termination Hirsch instituted this action. While the action was still pending Hirsch died from non-Hodgkins lymphoma, a type of cancer. His wife, Sharon Hirsch, was substituted as plaintiff and continues the action on behalf of

Hirsch's estate. The action consists of four counts.

In Count I, plaintiff alleges that when defendants decided to terminate Hirsch's employment with Photo–Vend they discriminated against him on the basis of a disability (his cancer) in violation of the Americans with Disabilities Act (ADA). In Count II, plaintiff alleges that by terminating Hirsch defendants discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act (ADEA). In Count III, plaintiff alleges that by firing Hirsch defendants intentionally interfered with his right to receive health insurance benefits in violation of Section 510 of ERISA. In Count IV, plaintiff alleges that defendants fired Hirsch in retaliation for his use of Photo–Vend's health insurance plan in violation of Illinois Health Insurance Claim Filing Act, 820 ILCS 45/0.01 et seq.

In the present motion defendants ask the court to grant summary judgment on all counts of plaintiff's first amended complaint. Plaintiff has voluntarily nonsuited Counts II and IV, but opposes defendants' motion on Counts I and III. In this order we grant defendants' motion on Count I, and deny on Count III.

### BACKGROUND

From 1962 to 1994 Paul Hirsch was an employee of Photo–Vend, Inc., a company that markets and places vending machines in various locations. During the period of time relevant to this case Elmer Schmitt was Photo–Vend's president and sole shareholder. During the same period, Carl Schmitt, Elmer Schmitt's son, was an officer and director of Photo–Vend and president of a related company, National Mall & Service, Inc.

Paul Hirsch began working for Photo–Vend in 1962. His job was to find new sites for the vending machines. He may have also serviced existing customers, but the parties disagree on this point. While employed by Photo–Vend, Hirsch was covered by the company's employee insurance plan, administered by an insurance provider called "Guardian." In the early 1990s Hirsch developed a form of cancer known as non-Hodgkins lymphoma. Both Elmer and Carl Schmitt were aware of Hirsch's condition. As his cancer progressed, Hirsch was increasingly forced to use the benefits provided under his employer-provided health insurance. At the same time, the Schmitts were concerned about the financial condition of their company.

In May 1994, Carl Schmitt met with a representative from Guardian to discuss the coming year's premiums and coverage proposal. These amounts were reviewed and adjusted on an annual basis. Guardian's representative informed him that Photo–Vend's plan cost would go up ten to twelve per cent for the coming year. Photo–Vend also received its annual financial statement during May 1994, which reflected a downturn in business since March of that year. Plaintiff claims Hirsch also spent time in the hospital during this period of time, although the parties do not provide medical records or the specific date or duration of each stay. At some point during this period of time Hirsch asked Photo–Vend if he could work at home two days each week. Photo–Vend, however, refused this request.

In June 1994, Elmer and Carl Schmitt realized that they would have to make some budgetary adjustments to deal with Photo–Vend's lack of business. They discussed how terminating Paul Hirsch would affect Photo–Vend's finances. Carl Schmitt calculated how much money the company would save by firing Hirsch, including the amounts that would be saved by not having to pay for his health care. In late July or early August, Carl Schmitt telephoned Paul Hirsch and terminated his job. Hirsch received six weeks severance pay and was offered nine months of continuing health care benefits.

Hirsch filed this action against National Mall and Photo–Vend on March 17, 1995. He died on January 2, 1996, and Sharon Hirsch was substituted as plaintiff. On August 19, 1996, plaintiff filed her first amended complaint.

### DISCUSSION

#### I. Summary Judgment Standard

A motion for summary judgment may be granted where the pleadings and evidence

present no genuine issues of fact and the movant is consequently entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Renovitch v. Kaufman,* 905 F.2d 1040, 1044 (7th Cir.1990). The movant must point to those portions of the record that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. The reviewing court shall draw all reasonable inferences in favor of the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). When it is clear that the plaintiff cannot carry her burden of persuasion at trial on one or more elements, summary judgment is appropriate for the defendant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

## II. *Count I: Whether Hirsch's Termination on the Basis of Disability Constitutes Discrimination*

In Count I, plaintiff alleges that Photo–Vend's financial reasons for terminating Hirsch were pretextual and argues that he was actually fired because his illness and consequent heavy use of the employee health plan were causing Photo–Vend's rates to increase at a time when the company was already having financial trouble. Plaintiff further argues that if defendants did in fact fire Hirsch because of his use of the health plan, doing so violated the ADA's provisions governing discrimination on the basis of disability. We disagree for two reasons. First, although initially the facts in this case might appear appropriate for an ADA claim, upon further consideration we find that the ADA was probably not intended to apply to this situation. Even assuming, however, that the ADA applies, we find that plaintiff has not provided sufficient evidence to make out a *prima facie* case, under that statute.

### A. *Application of the ADA*

At the outset we note that Congress' purpose in passing the ADA was to prevent employers from making employment decisions on the basis of unfounded stereotypes about the capabilities of disabled persons in the workforce. *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666 (7th Cir.1995). The allegations made by plaintiff in this case do not neatly fit into that mold. Plaintiff alleges that Photo–Vend terminated Hirsch not because of some bias arising from the fact that he had cancer (the alleged disability), but because his medical bills were driving up the cost of the company's health insurance policy. In other words, plaintiff alleges that defendants had a problem not with the fact that he had cancer, but with the fact that the cancer was costing the business. We do not think that concerns about the cost of insurance can be said to constitute the sort of "unfounded stereotypes" from which the ADA was meant to protect disabled employees. Moreover, according to plaintiff's logic in Count I, the defendants would have terminated Hirsch if he had *any* health problem that was running up the insurance costs, whether that problem was cancer or something else, and whether or not that problem fell within the ADA's definition of "disability." Thus, it seems likely that the ADA was not truly meant to apply to this situation.

### B. *Plaintiff's Prima Facie Case*

Nonetheless, even assuming that the ADA applies to this action, we find that plaintiff's claim cannot survive defendants' motion for summary judgment. In order to make out a *prima facie* case under the ADA anti-employment discrimination provisions, plaintiff must show that (1) he is disabled within the meaning of the ADA; (2) his work performance met his employer's legitimate expectations; (3) he was discharged; and (4) circumstances surrounding the discharge indicate that it was more likely than not that the disability was the reason for the termination. *Leffel v. Valley Financial Services,* 113 F.3d 787, 1997 WL 253024, *6 (7th Cir. 1997). Defendants argue here that they are entitled to summary judgment because plaintiff has not and cannot meet her burden of

proof on the first and fourth elements of the *prima facie* case listed above. We agree.

### 1. *"Disability" as Defined by the ADA*

Under the ADA a person is disabled if (1) he has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2).

▆▆▆ There is no question that someone with a history of cancer may be considered disabled for ADA purposes. The regulations provide: "The intent . . . in part, is to ensure that people are not discriminated against because of a history of disability. For example, this provision protects former cancer patients from discrimination based upon their prior medical history." E.E.O.C. ADA Title I Interpretive Guidance, Sec. 1630.2(k); *Santana v. R & M Business Systems, Inc.,* 1996 WL 715539, *4 (N.D.Ill.1996). Nonetheless, it is well recognized that not every illness is considered a disability and plaintiff always bears the burden of producing evidence to show that *on the facts of the particular case* the ailment at issue constitutes a disability for purposes of the ADA. *See, e.g., Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 164 (5th Cir.1996) (noting that "the determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has but rather on the effect of that impairment on the life of the individual") *quoting* 29 C.F.R. § 1630.2(j). This is true even when the disease is life-threatening or ultimately terminal. *See, e.g., Ennis v. National Association of Business and Educational Radio, Inc.,* 53 F.3d 55, 60 (4th Cir.1995) (holding that the ADA, plainly read, did not permit the court to conclude that HIV or any other sickness was *per se* a disability and requiring specific evidence of how the disease affected one's daily activities); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 190 (5th Cir.1996) (holding that, on the facts presented, breast cancer which required chemotherapy and treatment involving significant side effects did not qualify as a disability).

Moreover, plaintiff must not only show that the individual at issue was disabled, but that the disability "substantially limited" one or more of the individual's "major life activities." The accompanying regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c). Such activities are considered "substantially limited" when the person at issue is either unable to perform the activity or is significantly restricted as to the condition, manner or duration for which he can perform these acts, when compared to an average person. 29 C.F.R. § 1630.2(j)(*l*)(ii); *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1454 (7th Cir.1995). In determining whether the disability substantially limits one's major life activities, the court considers evidence of the nature and severity of the disability, its duration, and whether it will have a permanent or long-term impact. 29 C.F.R. § 1630.2(j); *Homeyer v. Stanley Tulchin Assoc., Inc.,* 91 F.3d 959, 962 (7th Cir. 1996). Because plaintiff bears the burden of proof on this issue, in order to survive defendants' summary judgment motion she cannot simply rest on the pleadings, but must point to some affirmative evidence supporting each element of her claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Plaintiff has failed to produce evidence sufficient to show us that Hirsch's performance of major life activities was substantially limited by his cancer. Although plaintiff has appended several deposition excerpts to her motion that reflect that Hirsch had a serious and ultimately terminal form of cancer, she points to no medical records or other affirmative evidence to show exactly how Hirsch was impaired in his daily activities. We acknowledge that the lymphoma from which Hirsch suffered was a very grave disease—grave enough, in fact, that Hirsch ultimately asked to work at home part-time and was forced to be occasionally absent from work. He did, however, continue to work and although plaintiff indicates work was difficult for him, she does not indicate how or why. Many people with cancer are able to walk, see, hear, speak, breathe and work without im-

pairment until the late stages of the disease. The fact that a person has cancer does not make him "disabled" *per se* under the ADA, and plaintiff has not produced evidence of disability other than to simply state that Hirsch had cancer.

■ Although plaintiff has not produced sufficient evidence to show that Hirsch was "substantially limited" by a "disability," she can still survive defendants' motion if she can show that, regardless of any actual disability, Hirsch's employer (Photo–Vend) regarded Hirsch as disabled and took negative employment-related action against him as a result. *See* 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(k). Specifically, she would have to show that even if Hirsch was not "disabled" under the ADA definition described above, his employer nonetheless treated him as though he were disabled and took discriminatory action against him on the basis of the perceived disability. 29 C.F.R. § 1613.702(e); *Hamm v. Runyon* 51 F.3d 721, 725 (7th Cir.1995).

Plaintiff has not produced evidence showing that Photo–Vend and its officers regarded Hirsch as disabled under the above standards. She argues that we should infer or assume that Photo–Vend regarded Hirsch as disabled from the fact that Photo–Vend knew that Hirsch had cancer. However, such reasoning would lead to the conclusion that any employee who informed his employer that he suffered from a life-threatening or terminal disease would become "disabled" for purposes of the ADA. We decline to rule so broadly. Plaintiff must produce evidence that the employer viewed the employee as someone who had a disability that seriously limited his ability to work or perform other "major life activities." Plaintiff has produced no such evidence.

### 2. *Whether Hirsch Was Terminated "Because Of" the Disability.*

■ Defendants next argue that even assuming plaintiff could produce the specific evidence needed to show that Hirsch had a "disability" as defined by the ADA, plaintiff has failed to produce evidence showing that Hirsch was fired "because of" his disease, as is required to make out the fourth element of the *prima facie* case. We agree. As we mentioned earlier, all of the evidence presented by plaintiff indicates that Hirsch was terminated because Photo–Vend wanted to cut back on expenses, not because the Schmitts had some negative stereotype about or bias against persons with cancer. The law requires plaintiff to produce more. *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666 (7th Cir.1995). The evidence presented does not indicate that the Schmitts acted against Hirsch specifically because he had cancer. If anything, they terminated Hirsch to avoid the financial repercussions of his illness, without any thought as to what the qualities of his illness were.

For the reasons stated above, we find that plaintiff has failed to produce evidence sufficient to make out a *prima facie* ADA claim. Accordingly, defendants' motion for summary judgment on Count I is granted.

### III. *Count III: Whether Defendants Intentionally Interfered with Hirsch's Rights Under the Health Insurance Plan in Violation of ERISA.*

■ In Count III, plaintiff alleges that the defendants violated ERISA by firing Hirsch, because they did so in order to intentionally interfere with Hirsch's right to receive benefits from the employee health insurance plan. Defendants move for summary judgment arguing, first, that Sharon Hirsch has no standing to pursue this case on her husband's behalf and, second, that plaintiff has not produced evidence sufficient to make out a *prima facie* case. We disagree.

#### A. *Standing Under ERISA*

ERISA provides that anyone who is a "beneficiary," "participant," or "fiduciary," as defined in the statute, may bring an action for wrongful interference with the right to receive benefits under an employee benefits plan. 29 U.S.C. § 1140. Sharon Hirsch, who represents her deceased husband as plaintiff in this case, does not fall into any of these categories and defendants argue that she consequently has no standing to sue under ERISA. To support this argument they rely on *McKinnon v. Blue Cross and Blue*

*Shield*, 935 F.2d 1187 (11th Cir.1991). Their reliance is misplaced.

In *McKinnon*, the original plaintiff was an employee of U.S.Steel who had placed a claim for costs associated with his lung surgery with the company's health insurance carrier, Blue Cross–Blue Shield (Blue Cross). *Id.* at 1190. When the insurance company refused to pay, he brought a Section 510 claim against Blue Cross. *Id.* at 1189. While the action was pending, the claimant died and his daughter, Belinda McKinnon (McKinnon), an employee of Blue Cross, was appointed executrix of his estate and substituted as plaintiff in the lawsuit against Blue Cross. *Id.* at 1190. In connection with the suit, McKinnon gave a deposition in which she accused Blue Cross of fraud and bad faith. *Id.* Blue Cross, her employer, discharged her as a result of these accusations. *Id.* McKinnon then filed suit, claiming among other things that Blue Cross had violated Section 510 *by firing her*. *Id.* Although the case does not specify, plaintiff's theory of recovery necessarily must have been that by firing her for pursuing her father's lawsuit, Blue Cross violated *her* right to receive *her father's* benefits on his behalf and pursue his personal claim. *Id.* The court granted Blue Cross' motion for summary judgment in McKinnon's suit, on the grounds that McKinnon was not a beneficiary or participant in a plan covered by ERISA and, consequently, could not pursue a Section 510 claim in her own right. The ruling, however, did not affect her right to proceed with her father's suit in a representative capacity.

In the present action Hirsch's wife was substituted as a plaintiff when he died while this action was still pending. Mrs. Hirsch did not bring this action on her behalf. Rather, she is representing her deceased husband, and for the purposes of this case stands in his shoes. In *McKinnon*, the plaintiff was pursuing two Section 510 claims, one on behalf of her deceased father for the denial of medical benefits, and another in a personal capacity resulting from the loss of her job. The case dismissed only the latter complaint and is, thus, not useful to the defendants in the present action.

## B. *Plaintiff's Prima Facie Case*

Defendants next argue that plaintiff cannot make out a *prima facie* Section 510 claim and are consequently entitled to judgment as a matter of law. To make out a *prima facie* case under ERISA's retaliation provision, plaintiff must show that he "(1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that prohibited intent to retaliate was present." *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir., 1996); *Salus v. GTE Directories Service Corp.*, 104 F.3d 131, 135 (7th Cir.1997). With respect to the third element, plaintiff must produce evidence that an employer's adverse actions were specifically intended to retaliate against him for the exercise of rights under the benefits plan or to interfere with the attainment of those rights. *See, e.g., Owens v. Storehouse, Inc.*, 984 F.2d 394 (11th Cir.1993). Finally, in addition to the elements listed, to survive defendants' motion for summary judgment, plaintiff must also produce evidence that creates some issue of fact as to whether the employer's proffered non-discriminatory reasons for his discharge were pretextual. *Grottkau* at 73.

In the present action defendants do not deny that Hirsch was covered by the group health insurance policy or that he was qualified for his position. Rather, they argue that plaintiff has been unable to produce evidence on the third element of a *prima facie* ERISA case—the requirement that Photo–Vend terminated Hirsch with the specific intent to interfere with his use of the company's health insurance plan. In fact, in their motion for summary judgment they claim that it is completely uncontested that Photo–Vend offered to continue Hirsch's health coverage at Photo–Vend's own expense subsequent to Hirsch's separation from the company (Def. Mot. for Sum.Jdgmt. at 13). Certainly if this were true, we would seriously doubt whether plaintiff could make out a *prima facie* case because plaintiff would essentially be arguing that Photo–Vend had the specific intent to interfere with Hirsch's health care plan while conceding

that Photo Vend's stated intent was to continue to provide Hirsch with exactly the same health coverage after his termination as he had before. Defendants, however, offered to continue Hirsch's health care coverage for *nine months* after his termination. This is not the same as having insurance for an indefinite period of time, particularly when one is terminally ill. Moreover, Hirsch clearly did not think that his health care was comparable before and after his termination, because if he had, he would not have brought this action.

Thus, contrary to defendants' arguments, we find that plaintiff has produced sufficient evidence to meet her burden on the third element (the specific intent requirement) of an ERISA *prima facie* case. The depositions provided by plaintiff reveal that defendants were aware of and concerned about their rising health insurance premiums. This concern was amplified by the fact that Photo–Vend's growth was slowing. Defendants' controlling officers were aware that Hirsch suffered from cancer and had discussed the fact that Hirsch's health care costs may have been a factor in driving up insurance costs. In May 1994 they met with Photo–Vend's insurance agent, where they were informed that the health premium for the next year would increase by ten to twelve per cent. In July Elmer and Carl Schmitt discussed what the company would save by terminating Hirsch and in late July or early August of 1994 Photo–Vend terminated Hirsch.

We find that this evidence is sufficient to support the allegation that defendants terminated Hirsch with the specific intent to interfere with Hirsch's health care benefits. Moreover, the same facts lead us to conclude that plaintiff has met her burden on the issue of pretext. As explained above, in addition to making out a *prima facie* Section 510 case, in order to survive defendants' motion for summary judgment plaintiff must also point to some evidence from which a jury could conclude that the defendants' stated reasons for terminating an employee are untrue. *Grottkau* at 73. Defendants claim that Hirsch was fired only because there was no further need for someone to fill his position

of new sitefinder. At a minimum, however, the facts listed above create an issue of fact about whether Hirsch was actually fired because his health care expenses were becoming a financial burden to Photo–Vend at a time when the company was already economically vulnerable.

We consequently conclude that plaintiff has made out a *prima facie* case under Section 510 of ERISA. Accordingly, we deny defendants' motion for summary judgment on Count III of plaintiff's first amended complaint.

### CONCLUSION

For the reasons stated above, we grant the defendants' motion for summary judgment on Count I of plaintiff's first amended complaint, and deny defendants' motion on Count III.