James B. CINELLI, Plaintiff,

v.

U.S. ENERGY PARTNERS; Energis and PSE & G, Affiliates of Wholly Owned Subsidiary Public Service Enterprise Group, Inc.; and XYZ Corp., A Fictitious Entity, Defendants.

No. CIV. 97–5630(JBS).

United States District Court,
D. New Jersey.

Sept. 21, 1999.

William B. Hildebrand, Feldman & Hildebrand, P.C., Cherry Hill, NJ, for Plaintiff.

Hope B. Pomerantz, Assistant General Attorney, PSE & G, Newark, NJ, for Defendants.

### *OPINION*

SIMANDLE, District Judge.

### I. INTRODUCTION

In this employment discrimination suit, plaintiff James Cinelli has sued U.S. Energy Partners ("U.S.E."), Energis Resources, Co., Inc. ("Energis"), Public Service Electric & Gas Company ("PSE & G"), and XYZ Corp., a fictitious entity, alleging discrimination on the basis of what defendants perceived to be his disability. Presently before the Court is defendants' motion for summary judgment pursuant to Rule 56(c), Fed.R.Civ.P.

The present motion challenges Counts One and Three of plaintiff's complaint.[1] Count One alleges that defendants U.S.E.

and Energis (now named PSEG Energy Technologies, Inc.) violated the ADA in terminating Cinelli's employment because he had a disability, real or perceived. Count Three alleges that defendants violated the NJLAD in terminating and/or failing to rehire Cinelli because he had a disability, real or perceived. Because Cinelli does not claim that he is or was disabled per se, the primary issue to be decided is whether for the purposes of summary judgment plaintiff has produced sufficient evidence to show that defendants perceived him as disabled because of his diagnosis of Non–Hodgkins Lymphoma, an incurable form of cancer. For reasons discussed herein, the Court holds that plaintiff has raised genuine issues of material fact as to whether defendants fired him because of perceived disability, but has failed to adduce sufficient evidence that defendants refused to rehire him based on this same perception. The Court will therefore will grant in part and deny in part defendants' motion to dismiss.

### II. BACKGROUND

Cinelli initiated this action on November 10, 1997 by filing a complaint seeking damages from all defendants under, *inter alia*, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12201 *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1 *et seq.* Specifically, Cinelli alleges that U.S.E. fired him from his job because he was perceived as being disabled and unable to perform his employment duties when he suffered the onset of Non–Hodgkins Lymphoma, and that PSE & G refused to rehire him based on the same perception. (Compl.¶¶ 1, 44–45.)

The evidence discussed for the purposes of this motion to dismiss is drawn from the affidavits and certifications of the parties.[2]

---

1. On September 28, 1998, this Court granted defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) as to Counts Two, Four and Five of the Complaint, leaving intact Counts One and Three.

2. In deciding a motion for summary judgment the Court will (i) resolve conflicting evidence

in favor of the nonmovant, (ii) not engage in credibility determinations, and (iii) draw all reasonable inferences in favor of the nonmovant. The movant has the burden of pointing out that evidence cognizable in a motion for summary judgment which the movant believes entitles it to summary judgment; the

Cinelli began working for defendant PSE & G, a subsidiary of the Public Service Enterprise Group, Inc. ("PSEG"), in April, 1972 as a service helper in the gas unit and rose through the years to become the Principal Staff Market Planning Analyst. (Cinelli Dep. at 10–17.) In 1994, Frank Peraino, Vice President and General Manager of the Eastern Region for defendant U.S.E., another subsidiary of PSEG and an affiliate of PSE & G, recruited plaintiff to transfer to U.S.E. (*Id.* at 21–23.) Peraino offered plaintiff the position of Account Manager in what was to be a new U.S.E. office in southern New Jersey. (*Id.* at 21.) On January 10, 1995, plaintiff resigned from PSE & G, and on January 13, he began to work for U.S.E. *Id.* Debra Lenny was hired as co-manager of the office at the same time. *Id.* Among the responsibilities Cinelli and Lenny shared were to hire salespeople, develop a sales process, develop customer service, and administer new customer arrangements. (*Id.* at 44–45.)

Another of Cinelli's responsibilities at U.S.E. was to sell gas and secure new accounts; i.e., new customers to which U.S.E. would then sell its product. (*Id.* at 53.) At some point, Peraino set specific, quantified sales targets for Cinelli. The parties dispute when this took place. Defendants argue that in July 1995 Peraino communicated to Cinelli specific minimum sales goals that Cinelli would have to meet. (Peraino Cert. at ¶ 9.) Plaintiff concedes that Peraino stated a general concern about sales figures, but contends that he never communicated any specific quotas or minimum sales figures in July. (Cinelli Dep. at 53–54, 73.) Nonetheless, the parties agree that Peraino did set specific sales quotas for Cinelli on November 16, 1995. (Cinelli Dep. at 75; Peraino Cert. at ¶ 16.)

In September 1995, plaintiff discovered a suspicious-looking lump on his neck. (Cinelli Dep. at 96–97.) In that same month, on or about September 20, 1995,

Peraino and Cinelli met to discuss plaintiff's role at U.S.E. At that time, Peraino relieved Cinelli of his responsibilities as Office Manager, promoted Lenny to the position of Office Manager, and instructed Cinelli to concentrate more on sales. (Cinelli Dep. at 74; Peraino Cert. at 3.) Cinelli maintains that even while directing him to concentrate more on sales, Peraino gave him no specific sales goals. (Cinelli Dep. at 74.)

The parties dispute whether at the time of this meeting Peraino was aware that Cinelli was ill. Cinelli maintains that during the September 20th meeting he and Peraino discussed the lump and that he told Peraino and Lenny that he was going to a specialist for a biopsy. (Cinelli Dep. at 102–105.) Cinelli also claims that during the meeting, Peraino commented on the lump on Cinelli's neck, stating "it looks pretty ugly." *Id.* Defendants maintain that Peraino did not know of Cinelli's illness at any time in September, and was not aware of Cinelli's health issues until a later meeting on November 16, 1995. (Peraino Dep. at 124–25.)

Throughout the fall of 1995, Cinelli met with his doctors concerning the lump on his neck. These sessions culminated in a biopsy, which confirmed that the lump was in fact a malignant tumor. (Cinelli Dep. at 90–91.) Defendants maintain that during this same period, Cinelli consistently failed to meet his sales targets and, because he resented Lenny's authority, was unpleasant and disruptive in the office. (Peraino Dep. at 103.)

On November 16, 1995 following the biopsy, Cinelli met with Peraino and Lenny met to discuss office sales output. During the meeting Peraino expressed concern over Cinelli's poor sales results, and imposed specific sales quotas on Cinelli in an effort to stimulate Cinelli's performance. (Peraino Dep. at 131–32.)

nonmovant must then respond by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as

to which the nonmoving party will bear the burden of proof at trial. *Fuentes v. Perskie,* 32 F.3d 759, 762 n. 1 (3d Cir.1994).

Shortly before this meeting, Cinelli had let Peraino and Lenny know that the lump on his neck had turned out to be cancerous, and that he was scheduled for surgery to remove the tumor. (Cinelli Dep. at 90–91.) Defendants dispute Cinelli's account of this conversation, and maintain that while Peraino understood that Cinelli had health problems, he was unaware until December 1995 that Cinelli had cancer. (Peraino Dep. at 125.) Despite allegedly not knowing that the lump was cancerous, however, Peraino was sufficiently concerned about Cinelli's health that he recommended that Cinelli take time off. (*Id.* at 84; Peraino Dep. at 124, 127.)

After the meeting with Peraino and Lenny, Cinelli met with Peraino alone. There, Peraino responded to Cinelli's concerns over his ability to meet the newly imposed quotas by assuring Cinelli that he had a "good career here" and that part of Lenny's job was to help Cinelli become successful. (*Id.* at 80.)

Cinelli was absent from work from November 16, 1995 until after Thanksgiving. On November 28, plaintiff underwent surgery to remove the lump. (Cinelli Dep. at 92.) On December 1, Cinelli returned to work. On this same day, Cinelli was told by his doctor that his illness was Non–Hodgkins lymphoma, a terminal, incurable cancer.[3] *Id.*

Unable to concentrate at work that day, Cinelli left for home with permission. *Id.* Later that day, he called Lenny to inform her of his poor prognosis. (*Id.* at 96–97.) On December 4, Cinelli told Peraino about the diagnosis and told him that he would have to undergo a battery of tests to determine the extent of the cancer. Peraino told plaintiff to take care of himself and not worry about the office. (*Id.* at 100.) Nevertheless, when plaintiff returned to work after blood tests on December 6, he learned of an unscheduled meeting with Peraino and Lenny. At this meeting, Lenny and Peraino conducted another review

of Cinelli's accounts, sales proposals, and potential leads. (*Id.* at 150–51.) Again, his supervisors inquired about his health, and Peraino expressed doubts that Cinelli could reach his quota given his "current situation." Cinelli took "current situation" to mean his health problems. (*Id.* at 151–52.)

The next day, three days after Cinelli revealed to his supervisors that he had terminal cancer, Peraino terminated Cinelli's employment for the stated reason that Cinelli had generated no new sales and only one new lead between November 16, 1995 and December 6, 1995. (Peraino Dep. at 106.)

Cinelli has produced evidence that, contrary to defendants' assertion that his poor sales levels led to his dismissal, his sales actually *improved* in the months preceding his dismissal. As support, Cinelli cites evidence that between October 1995 and January 1996, he increased his number of new accounts from six to twenty-three, and picked up six new accounts in November despite losing half the month to illness. (Ahrens Dep. at 50, 54.) Moreover, Cinelli points to evidence that his new accounts were of considerable size and would likely be profitable for the company. (*Id.* at 51.)

After his firing, Cinelli applied for unemployment benefits, and the New Jersey Department of Labor approved Cinelli's application. However, U.S.E. appealed Cinelli's compensation award. Significantly, in its appeal letter U.S.E. stated that Cinelli was discharged because of his "inability to perform his job functions." (Compl.Ex. A.) Notwithstanding U.S.E.'s appeal, Cinelli did eventually receive benefits.

Cinelli sought other employment after learning that his employment with U.S.E. was to be terminated. In the course of his search for a job, Cinelli applied for several open positions with PSE & G. (Cinelli Dep. at 111–14.) On January 19, 1996, plaintiff

---

**3.** On December 14, an oncology specialist completed his diagnosis and determined that plaintiff had Hodgkins Disease, a treatable cancer. However, defendants were not made aware of this fact before they discharged plaintiff.

received a letter from PSE & G which advised that PSE & G could not hire plaintiff for the same reasons for which plaintiff was discharged from U.S.E. (Compl.Ex. B.)

After receiving his right-to-sue letter from the EEOC, Cinelli filed the present lawsuit, the two surviving counts of which allege violations of the ADA and the NJLAD connected to Cinelli's discharge and PSE & G's refusal to rehire him. Defendants now move this Court to grant their motion for summary judgment and to dismiss the remaining two counts of the complaint.

## III. DISCUSSION

### A. Summary Judgment Standard

Defendants maintain that Cinelli's termination does not qualify as disability discrimination under the ADA or the NJLAD because the decision to terminate his employment was made prior to the onset of his illness. Because they did not know of Cinelli's illness during the relevant time period, defendants argue, Cinelli was not fired because he was perceived as disabled, and thus not within the ambit of the ADA. Secondarily, defendants maintain that they terminated Cinelli's employment because of his poor job performance, not because they perceived him as disabled. Finally, defendants argue that PSE & G employees had no knowledge of Cinelli's illness and that their refusal to hire him was in no way linked to any disability, real or perceived.

In considering defendants' present summary judgment motion, the Court must therefore decide whether Cinelli has adduced sufficient evidence to create a genuine issue of material fact as to whether defendants discriminated against Cinelli in violation of the ADA or NJLAD. In a motion for summary judgment, the Court may grant such motion only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" if it is supported by evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if a dispute about it might affect the outcome of the suit under the governing substantive law. *Id.* In deciding whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. "When the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment *must* be entered for the moving party." *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990) (emphasis in original).

### B. ADA Discriminatory Discharge Standards

Because Cinelli alleges discriminatory discharge in violation of the ADA, and

wrongful refusal to rehire in violation of the NJLAD, those Acts provide the substantive law governing the present motion. The core anti-discrimination section of the ADA provides that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112.

Because Cinelli has only indirect or circumstantial evidence that defendants discriminated against him on the basis of his illness, the familiar *McDonnell Douglas* Title VII burden-shifting rules apply to claims of discriminatory treatment under both the ADA and NJLAD.[4] *Walton v. Mental Health Assoc. of Southeastern Pennsylvania,* 168 F.3d 661, 668 (3d Cir. 1999). Under this framework, in a discriminatory discharge claim brought under the ADA, the initial burden of production is on the plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The phrase "prima facie case" means that the plaintiff's burden is to produce enough evidence to permit the trier of fact to infer the fact at issue. *Burdine,* 450 U.S. at 254, n. 7, 101 S.Ct. 1089.

To meet the prima facie burden in an ADA case, a plaintiff must show: (1) he has a disability or is perceived by the employer as disabled; (2) that he or she was qualified for the position from which he or she was discharged; and (3) he has suffered an adverse employment action because of that disability. *Deane v. Pocono Medical Center,* 142 F.3d 138, 142–44 (3d Cir.1998).[5] Thus, a defendant in a discriminatory discharge case is entitled to summary judgment if the plaintiff fails under this standard to establish a prima facie case of discrimination. *Jalil v. Avdel Corp.,* 873 F.2d 701, 707 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990); *Stinson v. Delaware River Port Auth.,* 935 F.Supp. 531, 539 (D.N.J.1996), *aff'd without op.,* 124 F.3d 188 (1997).

1. *First Stage: Plaintiff's Prima Facie Case of Discrimination*

Turning to the first element of the prima facie case, the Court must determine whether Cinelli qualifies as a disabled person protected under the ADA and NJLAD. The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); 29 C.F.R. § 1630.

Cinelli has not argued that he is disabled, but rather that defendants *perceived* him as disabled due to his cancer. Under the ADA, Cinelli can survive defendants' present motion if he raises a genuine issue as to whether his employer regarded him as disabled and took negative

---

**4.** New Jersey has adopted the *McDonnell Douglas* burden shifting approach to claims of discrimination in violation of the NJLAD. *See Goodman v. London Metals Exchange, Inc.,* 86 N.J. 19, 31, 429 A.2d 341 (1981)(citing *Peper v. Princeton Univ. Board of Trustees,* 77 N.J. 55, 81–84, 389 A.2d 465 (1978)). Thus, the Court will apply the *McDonnell Douglas* approach to both the ADA and NJLAD claims.

**5.** In NJLAD claims, the plaintiff must also establish that the employer sought someone else to do the same work after plaintiff; *Olson v. General Elec. Astrospace,* 966 F.Supp. 312, 316 (D.N.J.1997) (citing *Rogers v. Campbell Foundry Co.,* 185 N.J.Super. 109, 112, 447 A.2d 589 (App.Div.1982)). As defendants have replaced Cinelli, this element is not at issue.

employment-related action based on that perception. *See* 42 U.S.C. § 12102(2)(C); 29 C.F.R. § 1630.2(k).

■ As a preliminary matter, the parties contest whether, prior to the week he was fired, Cinelli's supervisors knew that he had cancer of any sort. As evidence in support of his claim that his employer knew of his cancer before deciding to fire him, Cinelli in his deposition testified that on September 20, 1995 he told Peraino that he was having a threatening lump biopsied, and that Peraino agreed that the lump "looks pretty ugly."[6] Cinelli also testified that on November 16, 1995 he definitively told Peraino and Lenny that the lump was cancerous and that he was scheduled for surgery.

It is undisputed that Cinelli was absent from work while recovering from surgery from November 17 through December 1, 1995, and that Peraino was aware of Cinelli's absence. It reasonably can be inferred that Cinelli's lengthy absence due to surgery put defendants on notice that his health problems were severe. Although Peraino claims not to have known that Cinelli suffered from cancer of any form until December, Cinelli has presented substantial evidence to the contrary. Specifically, that Peraino noted Cinelli's tumor in September 1995, and that he definitively told Peraino in mid-November, 1995 that the lump was cancerous. The Court finds that plaintiff has adduced sufficient evidence to allow a factfinder to disbelieve Peraino's statements about what he knew and when he knew it, creating a genuine issue as whether defendants knew of Cinelli's cancer prior to firing him.

■ The Court next must address whether, if an employee produces evidence that his employer perceived him as unable to perform his job due to cancer and its effects, the employer is prohibited by the ADA from discharging the employee based on this perception. For reasons discussed herein, the Court finds that the ADA prohibits discharge of an employee where that employee is perceived as disabled from work due to cancer.

■ Preliminarily, the Court notes that under the Third Circuit Court of Appeals' decision in *Deane v. Pocono Medical Center*, 142 F.3d 138, 142–44 (3d Cir. 1998)(en banc), a plaintiff need not actually suffer from a disability in order for his employer to *perceive* the plaintiff as disabled. Under *Deane*, this Court must find that defendants perceived Cinelli as disabled if they regarded his cancer as an affliction which "substantially limited" his ability to "work," which is included within the EEOC's definition of a major life activity. *Deane*, 142 F.3d at 144.[7] Thus, even though Cinelli does not suffer from a per se disability, if he is able to establish that his employer regarded his cancer as substantially limiting his ability to work, then his ADA claim should survive summary judgment.

Although no courts within this Circuit have spoken on this precise issue, at least two federal courts have denied summary judgment in an ADA suit after plaintiff employees suffering from cancer have pro-

---

6. The testimony of a discrimination plaintiff, standing alone, may be sufficient to make out a case of discrimination capable of withstanding a summary judgment motion. *Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir.1987), *cert. denied*, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988).

7. Although the Court is bound by the holding of the court in *Deane* that "work" constitutes a "major life activity", the EEOC definition of work as a major life activity was called into question by the Supreme Court's recent decision in *Sutton v. United Airlines*, —— U.S.

——, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). There, the Court, albeit in dicta, questioned the validity of the EEOC's understanding that "major life activities" include working. *Id.* at 2151. The *Sutton* Court noted that "there may be some conceptual difficulty in defining 'major life activities' to include work, for it seems 'to argue in a circle to say that if one is excluded, for instance, by reason of [an impairment, from working with others] ... then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap.' " *Id.* (citation omitted).

duced evidence that their employers perceived them as unable to do their jobs. *See E.E.O.C. v. Gallagher,* 181 F.3d 645 (5th Cir.1999); *Olbrot v. Denny's Inc.,* 1998 WL 525174 (N.D.Ill. Aug. 19, 1998).

With respect to employees perceived as disabled due to cancer, the recent decision of Fifth Circuit Court of Appeals in *E.E.O.C. v. Gallagher* is instructive. In *Gallagher,* the plaintiff employee suffered from myelodysplastic syndrome, a form of blood cancer. *Gallagher,* 181 F.3d at 648. The employer soon became concerned that the plaintiff's cancer and related treatments would render him unfit or unable to perform his job. *Id.* at 649. The employer did not fire the plaintiff employee outright, but rather constructively discharged him by demoting him and cutting his salary by half. *Id.* at 657. The court found that a jury could conclude that the employer's actions were based on a perception of disability. *Id.* at 656–57. The *Gallagher* court concluded that because the employer constructively fired an employee perceived as "disabled and incapable of performing his job, the presumption that [the employee] was not regarded as disabled dissolves." *Id.*

Under the reasoning of the court in *Gallagher,* if an employer regards an employee as incapable or unable to do his job because of cancer or treatments related to cancer, then that employer cannot escape ADA liability simply because of the "legal fig leaf" that the employer did not regard the plaintiff employee as suffering from a per se disability. *Id.But see Hirsch v. National Mall & Service, Inc.,* 989 F.Supp. 977, 982 (N.D.Ill.1997) (finding employee suffering from Non–Hodgkins Lymphoma had not produced evidence showing that his employer perceived him as disabled from working).

 In support of his argument that he was perceived as disabled, Cinelli cites as evidence a series of occurrences which, taken in combination, raise genuine issues as to whether his supervisors felt that he was unable to do his job because of his cancer. The incidences crucial to Cinelli's

perception argument took place during the three-week stretch between November 16, 1995 and December 7, 1995. On November 16, 1995, Cinelli definitively informed his supervisors that he had cancer. Immediately thereafter, there took place a previously scheduled meeting in which Peraino placed new sales quotas on Cinelli. Afterwards, Cinelli expressed concern that, because he would be missing work due to his illness, he might have difficulty meeting these new quotas. In response to Cinelli's concerns, Peraino was encouraging. He confirmed that Cinelli had a "good career" ahead of him with PSE & G, and that Lenny was available to assist him. The day after receiving these reassurances, Cinelli had surgery to remove a malignant lump on his neck and was absent from work for over two weeks. Cinelli was unable to work while in recovery. The day Cinelli returned to work, Friday, December 1, 1995, he learned that his cancer was terminal, and left work with permission. On Monday, December 4, 1995, he informed Peraino of his diagnosis. Two days later, on Wednesday, December 6, 1995, Cinelli's supervisors called yet another meeting to review his performance. The next day, three days after informing Peraino that he had a fatal illness, and one month after Peraino assured him that he had a "good career here," Cinelli was fired, purportedly for his failure to develop new sales prospects.

As shown above, PSE & G had in early December, 1995 a rapid and conclusive loss of confidence in Cinelli's ability to complete his work. Although Cinelli expressed concern about his ability to fulfill his quotas in the face of impending surgery, Peraino assured him in mid-November, 1995 that his work was valued. Nevertheless, Cinelli was given no meaningful chance to fulfill the quotas imposed at that time. He was absent from work for two weeks, and was discharged within days of his return. Moreover, in contrast to the defendants' proffered explanation for his firing, Cinelli has produce evidence that his sales had actually *improved* during the period between Cinelli's initial diagnosis of

cancer and his firing. Thus, Cinelli has raised a genuine issue as to whether the only changed circumstance between Peraino's reassurances and Cinelli's termination was the confirmation that Cinelli's cancer was terminal.

Cinelli's "perceived as" argument is bolstered by defendants' actions after his firing. After Cinelli was awarded unemployment benefits, defendants appealed the New Jersey Department of Labor's decision to award benefits, citing as its reason Cinelli's "inability to perform his job functions." (Compl.Ex. A.) Apparently, this was an attempt by PSE & G to disqualify Cinelli from receiving unemployment benefits. N.J.S.A. § 43:21–4(c)(1) provides that an unemployed individual shall be eligible to receive benefits only if "[t]he individual is able to work, and is available to work." Under this section, therefore, if the Cinelli was *unable* to work, then he would be ineligible for unemployment benefits and must seek benefits under New Jersey's temporary disability provisions. If Cinelli was discharged for performance-based reasons, there would have been no basis for contesting an unemployment claim absent workplace misconduct. *See* N.J.S.A. § 43:21–5; *In re J.C.,* 91 N.J.A.R.2d 10(UCC) (N.J.Admin., Oct. 10, 1991).

In this case, there is no allegation of workplace misconduct. Thus, absent a perception of disability, there is no apparent basis for the appeal of Cinelli's benefits. Based on the defendants' use of the word "inability" in this context, the Court finds that a reasonable inference can be made that Cinelli's employers regarded him as physically incapable of performing his work and thus disabled.

 Based on the combination of evidence cited above, the Court finds that a reasonable jury could find that Cinelli's employer perceived him as disabled. Defendants argue that Peraino was unaware until December, 1995 that Cinelli suffered from cancer, and never perceived Cinelli as disabled. While Peraino's explanation is plausible, the Court does not weigh competing evidence for the purposes of summary judgment. Rather, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment. *See, e.g., Boyle v. County of Allegheny Pa.,* 139 F.3d 386, 393 (3d Cir.1998). Because the Court is here faced with competing explanations of the same events, credibility is crucial and must be decided by a jury. For these reasons, the court finds that Cinelli has met his burden of production as to the first element of a prima facie case of discrimination.

The second element of a prima facie case requires that Cinelli establish that he was qualified for the job from which he was fired. Despite the fact that Cinelli was recruited and hired by Peraino, defendants argue that Cinelli has not met his burden of proof on the second element of the prima facie case because he cannot show that he met his employer's expectations. Specifically, defendants point to evidence by way of their certifications that plaintiff had not been performing his job (Defs.' Br. at 17) and note that plaintiff has not countered this with any evidence of his own. (Defs.' Reply Br. at 7.)

 This argument is misplaced. Defendants' complaints about Cinelli's performance are not sufficient to defeat his claim at the prima facie stage, for if they were, any employer could defeat a discrimination claim at the prima facie case stage simply by alleging that it was dissatisfied with the plaintiff's performance. The Court does not question PSE & G's prerogative to set any standards it wishes for employee performance nor does it seek to substitute another view of what constitutes adequate performance. The Court simply declines to treat a subjective assessment of Cinelli's performance as evidence that he has failed to establish a prima facie case, thereby collapsing the entire analysis into a single initial step at which all issues are

resolved. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 799 (3d Cir.1990). The Court finds that Peraino's recruitment and hiring of Cinelli establishes that Cinelli was objectively qualified for his job. Whether poor performance was the real reason behind Cinelli's discharge is best left to the pretext stage under *McDonnell–Douglas–Burdine.*

The third and final element of the prima facie ADA case requires that Cinelli produce material evidence that he suffered an adverse employment action because he was disabled or perceived as disabled. It is uncontested that Cinelli's firing constitutes an adverse employment action. As no issue of fact remains contested with respect to this final element, Cinelli is deemed to have established a prima facie case of discrimination.

### 2. Second Stage: Defendants' Legitimate Reasons for Dismissal

Once a plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, non-discriminatory reason for the discharge. *McDonnell–Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Hicks*, 509 U.S. at 506–07, 113 S.Ct. 2742. An employer satisfies this burden by introducing evidence which, taken as true, would permit a trier of fact to conclude that unlawful discrimination was not the reason for the discharge. *Burdine*, 450 U.S. at 254–56 and n. 8, 101 S.Ct. 1089. However, an employer need not prove that the proffered reason actually motivated its behavior. *Id.* Instead, it is sufficient if the defendants' evidence raises a genuine issue of material fact as to whether it discriminated against the plaintiff. *Id.* at 254, n. 7, 101 S.Ct. 1089.

■■■ Defendants have met that burden here. They have produced evidence that Peraino set specific minimum sales goals for Cinelli in July 1995, and that Cinelli consistently missed these goals. (Peraino Cert. at ¶ 9.) Defendants explain that Cinelli was discharged not because he was perceived as disabled, but because of his sub-par sales figures. As this explanation is legally sufficient to rebut Cinelli's claims of discriminatory discharge, defendants have produced evidence of a legitimate, non-discriminatory reason for firing Cinelli, and have satisfied the second stage of the *McDonnell Douglas* framework.

### 3. Third Stage: Pretext

■■■ Once an employer meets its burden of producing a legitimate, non-discriminatory reason for plaintiff's dismissal, the burden of production shifts back to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered explanation for the discharge is pretextual and that the employer's true motivation was discriminatory. *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 253, 256, 101 S.Ct. 1089; *Hicks*, 509 U.S. at 507–08, 113 S.Ct. 2742. "It is not enough ... to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Hicks*, 509 U.S. at 519, 113 S.Ct. 2742 (emphasis in original). However,

because the factfinder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered nondiscriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons, a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (1) discrediting the proffered reasons, either circumstantially or directly, or (2) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Thus, if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case.

*Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994) (emphasis in original). A plaintiff can discredit an employer's explanation by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* find them unworthy of credence and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons." *Fuentes,* 32 F.3d at 765 (emphasis in original) (citations and internal quotes omitted). A defendant is entitled to summary judgment at this stage if the plaintiff has not produced sufficient evidence to rebut the defendant's proffered nondiscriminatory explanation for the discharge. *Jalil v. Avdel Corp.,* 873 F.2d 701, 707 (3d Cir. 1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990); *Stinson v. Delaware River Port Auth.,* 935 F.Supp. 531, 539 (D.N.J.1996), *aff'd without op.,* 124 F.3d 188 (1997).

■ In this case, Cinelli has demonstrated sufficient inconsistencies and weaknesses in defendants' proffered reasons for dismissal that a reasonable factfinder could find them unworthy of belief. Defendants have argued that the chief reason for Cinelli's dismissal was his poor sales output. As discussed above, Cinelli responds that, because his sales numbers were actually increasing during the relevant time period, defendants' explanation of discharge based on poor sales is merely a pretext designed to mask an illegal discriminatory motive. Further, he argues that the timing of his firing, Peraino's expression of concern over the illness's effect on Cinelli's ability to meet his sales goals due to his "current situation," and the company's appeal of his award of unemployment benefits all cast doubt on the defendants' proffered explanation for his discharge.

The Court finds it significant that Cinelli was given virtually no chance to meet the new sales quotas before he was fired. Drawing all inferences in favor of the non-movant, the Court will assume that the quotas were set by Peraino on November 16, 1995. Because he was fired less than three weeks later, and missed most of this time due to his illness, the Court finds that a reasonable inference could be made that whether Cinelli met his quota was irrelevant to defendants, and that defendants' use of quotas to justify firing Cinelli is pretextual.

Moreover, the conflicting versions of Cinelli's sales performance raise a genuine issue as to whether Cinelli was failing to meet his sales figures, or whether his employer's expectations actually were met. Cinelli first argues that, despite defendants' claims of poor sales figures, his sales figures had improved during the relevant time period. Defendants respond that Cinelli's potential sales do not amount to actual accounts receivable, and that the number of new accounts and the quantity of decatherms sold are mere "straw men" set up by the plaintiff to distract from Cinelli's overall poor performance. The Court finds, however, that Cinelli has come forward with sufficient evidence that a reasonable fact finder could believe Cinelli's version of his sales figures, thus allowing a reasonable inference that defendants did not act for the stated reason of poor sales.

Secondarily, Cinelli argues that the timing of his firing, coming as it did three days after he revealed that he suffered from terminal cancer and a month after Peraino assured Cinelli of his good future with the company, casts doubt on defendants' proffered explanations, and demonstrates that perception of disability was the real motivation behind his discharge. Defendants argue that the timing of the decision to fire Cinelli was mere coincidence. While the timing of the discharge may ultimately prove to be coincidental, defendants must establish this at trial. The Court finds that because Cinelli's disclosure of his fatal illness was virtually contemporaneous with his discharge, and because Cinelli has produced evidence that his employer had doubts about his ability to perform because of his "current [medical] situation," the circumstances surrounding plaintiff's firing give rise to a

reasonable inference that Cinelli's employers fired him based on the perception that he was unable to do his job. For this reason, the issue of whether the timing of his firing is coincidental or discriminatory should not be dealt with in a summary fashion, and must be decided by a factfinder.

Finally, Cinelli argues that defendants' proffered explanation for Cinelli's firing—poor sales performance—is flatly contradicted by the defendants' decision to appeal his award of unemployment benefits. As explained above, the Court finds that the language "terminated for inability to perform his job functions" indicates a perception of Cinelli as disabled due to cancer. Because plaintiff has produced sufficient evidence of pretext to rebut the defendants' proffered nondiscriminatory explanation for the discharge, the defendants' motion for summary judgment is denied with respect to the claims of discriminatory discharge in violation of the ADA and NJLAD.

C. *Failure to Rehire Based on Perception of Disability*

In addition to his claim against defendants for terminating his employment in violation of the ADA and NJLAD, Cinelli alleges violation of the ADA by PSE & G and violation of the NJLAD by all defendants for their refusal to rehire Cinelli based on a perception of disability. In his complaint, Cinelli states that following his discharge, he inquired about open positions at PSE & G and was informed that a position could not be found for him within a "competitive organization with the same demands as U.S. Energy Partners." (Compl.Ex. B.) Based on this refusal to rehire, Cinelli alleges that he was not hired because he was perceived as disabled.

▮ In order to prevail on a claim of refusal to hire because of perception of disability, a plaintiff must show that the employer perceived him as disabled at the time the hiring decision was made. *Geraci v. Moody–Tottrup, Int'l, Inc.*, 82 F.3d 578

(3d Cir.1996). In order to defeat the present summary judgment motion, therefore, Cinelli must produce evidence that would allow a rational fact finder to conclude that he was not hired based on defendants' perception of him as disabled at the time the hiring decision was made. *See Turner v. Schering–Plough Corp.*, 901 F.2d 335, 341 (3d Cir.1990).

▮ Cinelli has not met that burden of coming forth with such evidence here. Defendants have submitted certifications from each of the three individuals to whom Cinelli spoke about a job at PSE & G in 1995. Each individual has denied knowing of Cinelli's illness at the time he inquired about a position with PSE & G. (Lark Cert. at ¶¶ 5–6; Lynk Cert. at ¶¶ 2,5,8; Senkewicz Cert. at ¶¶ 3,5,7.) Although Cinelli alleges that there was pervasive knowledge of his illness at PSE & G, and that he was not hired because he was generally perceived as disabled due to his illness, he provides no evidence in support of this allegation beyond his own deposition testimony that "it became general knowledge that Jim Cinelli was very ill." (Cinelli Dep. at 136.) Cinelli has not deposed any of the individuals involved in the hiring decision, nor was Cinelli's statement supported by any first hand knowledge that he was regarded as disabled by the individuals making the decision whether or not to rehire him. Without more, Cinelli's statement is hearsay, and is insufficient to allow the refusal to rehire claim to survive summary judgment. The refusal to rehire claim will therefore be dismissed.

IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 56(c) is granted in part and denied in part. Specifically, plaintiff's claim in Count Three of failure to rehire based on discrimination in violation of the NJLAD is dismissed. Counts One and Three of plaintiff's complaint survives in all other respects. Thus, this case will be tried upon plaintiff's remaining claims in Counts One and Three, namely, that the defendants violated the ADA and NJLAD by

terminating his employment because they perceived him as disabled due to his diagnosis of Non–Hodgkins Lymphoma. The accompanying order is entered.

### ORDER

This matter having come before the Court upon the motion of Defendants to dismiss Counts One and Three of the Complaint pursuant to Fed.R.Civ.P. 56(c); and the Court having considered the submissions of the parties; and for the reasons stated in the Opinion of today's date;

It is this day of September, 1999, hereby

ORDERED that Defendants' motion for summary judgment under Fed.R.Civ.P. 56(c) be, and hereby is, *GRANTED* in part as to Plaintiff's claims in Count Three of discriminatory refusal to rehire, and *DENIED* as to the remainder of plaintiff's complaint in Counts One and Three.